**STATE of Utah, Plaintiff and Appellee,**

v.

**Lyndon C. LEE, Defendant and Appellant.**

**No. 910430–CA.**

Court of Appeals of Utah.

April 6, 1992.

Joan C. Watt (argued) and Brooke C. Wells, Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant-appellant.

R. Paul Van Dam, State Atty. Gen. and Kenneth A. Bronston (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff-appellee.

Before GARFF, GREENWOOD and RUSSON, JJ.

RUSSON, Judge:

Lyndon C. Lee appeals his convictions of aggravated robbery, a first degree felony, in violation of Utah Code Ann. § 76–6–302 (1990). We affirm.

## I. FACTS

Lee's convictions arise from two separate incidents. The first incident occurred on August 15, 1990. Martin, Lee's first victim, testified that he met Lee early that evening at the Radio City Bar, a gay bar in Salt Lake City. At Lee's request, the pair played pool at Radio City. Later that evening, Lee offered Martin a ride home on his motorcycle, which Martin accepted. However, rather than taking Martin home, Lee proceeded on Interstate 80 toward Parley's Canyon instead, driving at speeds of

eighty-five to ninety miles per hour. Lee exited Interstate 80 at the Lamb's Canyon exit and stopped the motorcycle.

Martin further testified that when he and Lee stopped in the canyon, Lee climbed a nearby hill while Martin used the restroom. After coming out of the restroom, Martin approached Lee at which time Lee grabbed Martin and threw him to the ground. Lee then pushed his knee in his stomach, put a knife to his throat, and demanded his money. When Martin gave Lee only twelve dollars, Lee forced Martin to undress. After Lee searched Martin's clothing for additional money, Lee scattered them around the area and left on his motorcycle, leaving Martin in the canyon alone.

Lee disputes the above facts. According to Lee, Martin approached him at Radio City and offered to pay Lee twenty dollars to allow Martin to perform oral sex on him. Lee agreed and suggested Lamb's Canyon as a secluded spot to engage in the activity.

According to Lee's testimony, Lee and Martin then went to the canyon, and Martin performed oral sex on him. However, when Lee refused to have intercourse with him, Martin refused to pay him. Lee got upset and grabbed Martin, forced him to the ground, and demanded payment. When Martin gave Lee only twelve dollars, Lee searched Martin's pants for additional money which Lee claims he was owed. When Lee found nothing, he left on his motorcycle. Additionally, Lee denies using a knife or any other weapon.

The second incident occurred on August 20, 1990, five days after the first incident. Williamsen, Lee's second victim, testified that he met Lee early that evening outside the Sun Tavern, a gay bar in Salt Lake City. According to Williamsen, Lee approached him outside the Sun Tavern and requested that Williamsen sign him in as his guest. Once inside, Lee asked Williamsen to play pool. After they played pool for some time, Lee offered Williamsen a ride on his motorcycle. Williamsen claims that at first he refused, but eventually he agreed to leave on Lee's motorcycle.

The two men proceeded on Interstate 80 toward Parley's Canyon. Williamsen testified that Lee drove very fast, at least seventy to seventy-five miles per hour. Lee exited Interstate 80 at exit 131 in Parley's Canyon and stopped the motorcycle. Lee then approached Williamsen and hit him, knocking him to the ground. Williamsen contends that Lee put a choke hold on him, put a knife to his throat and demanded that Williamsen empty his pockets. Williamsen also claims that Lee threatened to kill him if he moved. Lee took $150 dollars from Williamsen, as well as his wallet which contained an additional $350. Lee then directed Williamsen to take off his clothes. Lee scattered Williamsen's clothing, wallet and car keys and left on his motorcycle, leaving Williamsen alone in the canyon.

Again, Lee disputes the above account. According to Lee, on August 20, 1990, he met Williamsen at the DeerHunter Bar. Lee contends that Williamsen approached him and offered to sell him cocaine. Lee responded that he might know of some people interested in purchasing the cocaine. Before leaving the bar to make the contacts, Lee agreed to meet Williamsen at the Sun Tavern later that evening.

Lee testified that the two met later at the Sun Tavern, at which time Lee tested a vial of cocaine which Williamsen had brought to the bar and gave Williamsen $225 for the cocaine. However, because Williamsen was concerned about exchanging the cocaine in the bar, the two men agreed to ride to another location on Lee's motorcycle.

Lee contends that after he and Williamsen drove to the canyon, Williamsen gave Lee some powder which Williamsen represented to be cocaine. Lee tested the powder and charged that it was not the same cocaine that he had tested at the bar. Accordingly, Lee demanded his money back. Williamsen responded that he no longer had the money. After discovering that Williamsen had only thirty or forty dollars in his pocket, Lee got upset and demanded that Williamsen disrobe. Lee claims that he found his money in Williamsen's underwear and then left on his motorcycle. Again, Lee contends that he did not use a knife or any other weapon.

On August 24, 1990, four days after the second incident, Sergeant Grimes and Officer Bankhead of the Salt Lake City Police Department were called to the Back Street Bar, a gay bar in Salt Lake City, to investigate a report of a possible robbery suspect. Officer Bankhead testified that after Lee was identified as the suspect, he searched Lee and found a concealed knife in Lee's back pocket. Officer Bankhead arrested Lee.

Lee was charged with two counts of aggravated robbery, a first degree felony, in violation of Utah Code Ann. § 76–6–302 (1990). Prior to trial, Lee filed a motion to sever the two counts, which motion was denied. Following a jury trial, Lee was convicted on both counts and sentenced to concurrent prison terms of five years to life.

Lee appeals his convictions, raising the following issues: (1) Did the trial court err in applying Utah Code Ann. § 77–8a–1 (Supp.1991), instead of Rule 9 of the Utah Rules of Criminal Procedure, to Lee's motion to sever?; (2) If not, did the trial court nonetheless err in denying Lee's motion to sever under Utah Code Ann. § 77–8a–1 (Supp.1991)?; and (3) Did the trial court's refusal to sever the charges violate Lee's due process rights under state or federal constitutional law?

## II. APPLICATION OF UTAH CODE ANN. § 77–8a–1:

■ Lee first argues that the trial court erred in applying Utah Code Ann. § 77–8a–1 (Supp.1991), instead of Rule 9 of the Utah Rules of Criminal Procedure,[1] to Lee's motion to sever. Section 77–8a–1(1) provides:

Two or more felonies, misdemeanors, or both, may be charged in the same indictment or information if each offense is a separate count and if the offenses charged are:

(a) based on the same conduct or are otherwise connected together in their commission; or

(b) alleged to have been part of a common scheme or plan.

Lee contends that under principles announced in *Carter v. Utah Power & Light Co.*, 800 P.2d 1095 (Utah 1990), Rule 9 of the Utah Rules of Criminal Procedure is controlling here. In *Carter*, the Utah Supreme Court held that when interpreting legislation, courts will not "find that the legislature has intended to alter the operation of the rules of procedure absent a clear statement to that effect." *Id.* at 1097 n. 4. Thus, Lee argues, since the Utah Legislature, in enacting section 77–8a–1, did not express a "clear statement" of its intent to amend Rule 9, that rule controls in the case at bar.

Lee's argument fails. The language of senate bill 181, the predecessor to section 77–8a–1, plainly expresses the legislature's intent to repeal Rule 9 of the Utah Rules of Criminal Procedure, pursuant to Article VIII, sec. 4 of the Utah Constitution. The pertinent portion of senate bill 181 provides:

Section 2. Repealer.

Section 77–35–9, *Rule 9–Joinder of offenses of defendants, as enacted by Chapter 14, Laws of Utah 1980, is repealed.*

Section 3. Two thirds vote required.

The amendments to this act take effect only if this act is approved by two-thirds of all members elected to each house, as provided in Article VIII, Sec. 4 of the Utah Constitution.

1990 Utah Laws ch. 201, § 1 (emphasis added). Because, the legislature expressed a clear statement repealing Rule 9, the trial court properly applied section 77–8a–1(1) to the case at bar.

## III. MOTION TO SEVER

■ Lee next contends that the trial court erred in denying his motion to sever under Utah Code Ann. § 77–8a–1(1) (Supp. 1991). "[T]he grant or denial of severance

---

1. Rule 9 of the Utah Rules of Criminal Procedure provides:

(a) Two or more offenses may be charged in the same indictment or information in a

separate count for each offense if the offenses charged arise out of a criminal episode. . . .

is a matter within the discretion of the trial judge, so we reverse a conviction only if the trial judge's refusal to sever charges 'is a clear abuse of discretion in that it sacrifices the defendant's right to a fundamentally fair trial.' " *State v. Lopez*, 789 P.2d 39, 42 (Utah App.1990) (quoting *State v. Pierre*, 572 P.2d 1338, 1350 (Utah 1977), *cert. denied*, 439 U.S. 882, 99 S.Ct. 219, 58 L.Ed.2d 194 (1978)).

Specifically, Lee argues that the crimes for which he was charged were improperly joined because they were not "alleged to have been part of a common scheme or plan" as required by section 77–8a–1(1). Because Utah appellate courts have yet to interpret section 77–8a–1(1), we look to other states' decisions interpreting "common plan or scheme" language for assistance. The Arizona Supreme Court, in interpreting a rule similar to section 77–8a–1, held that: "[i]n order for two crimes to be classified as a common plan or scheme it is not necessary for the crimes to have been perpetrated in an absolutely identical manner, so long as the court perceives a visual connection between the two crimes." *State v. Tipton*, 119 Ariz. 386, 581 P.2d 231, 233 (1978). In *Tipton*, the court found a "common plan or scheme" existed where the crimes

> arose from a robbery and attempted robbery of two self-service gas stations, at approximately the same time on consecutive evenings. On both occasions defendant initiated contact with the lone attendant by requesting innocuous items. He then placed his right hand in his coat pocket, simulated the presence of a gun and demanded money.

*Id.* 581 P.2d at 233.

Moreover, in *State v. Rodriguez*, 145 Ariz. 157, 700 P.2d 855 (App.1984), the Arizona Court of Appeals, in interpreting that same rule, found a "common scheme or plan" based on the following facts:

> (1) all six victims were assaulted within approximately a five-week period; (2) all incidents occurred in either Mesa or Tempe within eight miles of the defendant's residence; (3) all of the victims were young white females; (4) all of the

sexual assaults occurred at or very near apartments in which the victims lived; (5) most of the assaults involved weapons, and in *all* of them threats were made; (6) in all of the sexual assaults, the defendant at some point, accomplished either anal or vaginal intercourse with the victims from behind; (7) something of value was either taken or threatened to be taken in each instance.

*Id.* 700 P.2d at 868 (emphasis in original). In establishing the existence of a "common scheme or plan," the court stated:

> In order for two crimes to be classified as a common scheme or plan ... it is not necessary that the crimes be perpetrated in an absolutely identical manner, so long as the court perceives a sufficient similarity between the crimes to make it probable they were committed by the same person.

*Id.* (citations omitted).

Further, in *State v. Schwartzmiller*, 107 Idaho 89, 685 P.2d 830 (1984), the Idaho Supreme Court, in interpreting a rule which permitted joinder of two or more offenses when based on "two or more acts or transactions connected together or constituting parts of a common scheme or plan," held:

> Here the facts demonstrate a common plan, in that Schwartzmiller frequents areas where young boys may be found, befriends boys with no father figure in the home, entices them from their homes, lowers their natural inhibitions through the use of drugs and alcohol, and commits sex acts upon them. We find no error in the joining of the offenses.

*Id.* 685 P.2d at 834.

Finally, the Missouri Court of Appeals found the existence of a "common scheme or plan" where a defendant targeted young black males and solicited "deviate sexual intercourse" with them for money. *State v. Warren*, 717 S.W.2d 231 (Mo.App.1986). In upholding joinder of the charges, that court stated:

> [B]oth counts in the indictment refer to the same type of offense—patronizing prostitution by requesting another person to engage in deviate sexual inter-

course with appellant for money. Both offenses occurred within a relatively short period of time—just under two and one half months.

*Id.* at 232.

Applying the above reasoning to the facts of this case, the trial court properly concluded that the alleged crimes were part of a "common scheme or plan." The parallel fact pattern in both incidents plainly demonstrates the existence of a calculated plan. Those facts are: (1) Lee targeted only a limited class of persons, namely gay men; (2) in order to contact his victims, Lee frequented gay bars in Salt Lake City; (3) Lee met his victims in the early evening; (4) at the bar, Lee would solicit his victims by playing pool; (5) Lee enticed his victims to leave the bar with the same invitation to go riding with him on his motorcycle; (6) Lee drove each victim on his motorcycle at high speed to remote locations in Parley's Canyon; (7) once in the canyon, Lee robbed each of his victims by suddenly grabbing them, holding a knife to their throat and demanding that they empty their pockets; (8) after robbing his victims, Lee ordered them to disrobe, after which Lee would scatter their clothes before driving away on his motorcycle; and (9) the incidents occurred within five days of each other. The striking similarities in Lee's conduct in each incident, coupled with the proximity in time of the offenses, supplied a sufficient basis for the trial court to conclude that the crimes were "alleged to have been part of a common scheme or plan" under section 77–8a–1(1). Therefore, the trial court did not abuse its discretion in denying Lee's motion to sever.

▆ Lee argues that even if the two charges were properly joined under section 77–8a–1(1), the trial court nevertheless abused its discretion in failing to sever the counts pursuant to Utah Code Ann. § 77–8a–1(4)(a) (Supp.1991), which provides:

If the court finds a defendant or the prosecution is prejudiced by a joinder of offenses or defendants in an indictment or information or by a joinder for trial together, the court shall order an election of separate trials of separate counts,

grant a severance of defendants, or provide other relief as justice requires.

The Utah Supreme Court has stated that the threshold inquiry as to whether joinder is prejudicial to a defendant is whether evidence of the other crime would have been admissible in a separate trial. *See State v. Saunders*, 699 P.2d 738, 741 (Utah 1985). Accordingly, in order to determine whether evidence of one robbery would be admissible at a separate trial on the other count, we look to Rule 404(b) of the Utah Rules of Evidence. That rule provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *State v. Lopez*, 789 P.2d 39 (Utah App.1990), we held that the joinder of a murder charge and a child abuse charge against the defendant was proper and not prejudicial because evidence of one crime would have been admissible at a separate trial to prove the defendant's intent. We stated:

[T]he only evidence that the State could bring forward to shed light on defendant's conduct and the surrounding circumstances was [the other victim's] testimony.... We find that [the other victim's] testimony ... is admissible to show defendant's intent.... This testimony is reasonably necessary because [the other victim] was the only eyewitness ... and the State had no alternate means of bringing the same evidence before the jury. Consequently, even if the charges would have been severed, [the other victim's] testimony would have been admissible. Thus, severance would have served no purpose, and the trial judge did not abuse his discretion in refusing to grant appellant's motion.

*Id.* at 43 (citations omitted).

Additionally, in *State v. Morrell*, 803 P.2d 292 (Utah App.1990), we held that

evidence of a prior robbery of a pizza delivery person was admissible in defendant's subsequent trial for a similar robbery involving a pizza delivery person as probative of defendant's intent to rob the victim and as refutation of the defendant's claim that he was merely attempting to collect a debt. *Id.* at 296. We stated:

> Testimony concerning the prior robbery was the only evidence, other than defendant's and [the victim's] conflicting testimony, bearing on whether defendant's intent was to rob [the victim] or merely to secure payment of money defendant believed he was owed. The testimony, then, was clearly prejudicial to defendant. It was, however, extremely probative of defendant's intent during the incident with [the second victim]. The two robberies for which defendant was charged occurred within months of each other. Each manifested an almost identical factual pattern.... The state had a great need to present this evidence to demonstrate intent; no effective alternative proof was available.... [A]dmission of the evidence was proper under Rule 404(b) and not barred by Rule 403[.]

*Id.* (citation omitted).

*Lopez* and *Morrell* make clear that had Lee's crimes been tried separately, the evidence of one robbery would be admissible in a separate trial under Rule 404(b). In the case at bar, Lee was charged with aggravated robbery, pursuant to Utah Code Ann. § 76-6-302 (1990). Because intent is an element of the offense under that section, the State must prove that Lee intended to rob his victim. That intent, however, "need not be proved by direct evidence but may be inferred from defendant's conduct and surrounding circumstances." *Lopez*, 789 P.2d at 43 (quoting *State v. Davis*, 711 P.2d 232, 234 (Utah 1985)). Accordingly, evidence of Lee's prior robbery would be admissible at a separate trial for the purpose of establishing Lee's intent.

■ Moreover, evidence of a prior robbery would be admissible at a separate trial for the purpose of establishing Lee's plan to target and rob homosexual men. *See* *State v. Kerekes*, 622 P.2d 1161, 1165 (Utah 1980); *State v. Cauble*, 563 P.2d 775, 779–80 (Utah 1977). The fact that Lee's prior crimes were nearly identical; specifically that Lee went to a gay bars, targeted gay men, offered them a ride on his motorcycle, drove them to the canyon, robbed them at knife point, forced them to undress, scattered their clothes, and left them alone in the canyon indicates a deliberate plan. Accordingly, the evidence of Lee's prior robbery would also be admissible at a separate trial for the purpose of establishing that plan.

■ While evidence of Lee's crimes would be admitted under Rule 404(b), the evidence's probative value must still outweigh its tendency to unfairly prejudice the defendant in order to be admissible. *See* *Lopez*, 789 P.2d at 43. Rule 403 of the Utah Rules of Evidence provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

With only the conflicting testimony of Lee and his victim at trial, evidence of a prior robbery would be exceedingly probative not only in proving Lee's intent to rob his victim but also in disproving Lee's claim that he merely intended to take money that he was owed. The stark similarities in Lee's crimes, combined with the proximity in time in which they were committed, rendered the evidence critical to the State in establishing Lee's intent, particularly since no other proof was available. Accordingly, while admission of the prior robbery would naturally result in some prejudice to Lee, the probative value of the evidence would significantly outweigh any prejudicial effect. Because admission of the evidence of Lee's prior robbery would be admissible at a separate trial under Rule 404(b) and Rule 403, severance would have served no purpose in this case and Lee was not prejudiced by the trial court's refusal to sever the counts.

## IV. DUE PROCESS

Lastly, Lee argues that the trial court's joinder of the counts against him violated his rights to due process under the state and federal constitutions, citing *State v. Gotfrey*, 598 P.2d 1325 (Utah 1979). In *Gotfrey*, the Utah Supreme Court held:

> It is regrettable that the misjoinder of the three charges necessitates a reversal of the convictions when the evidence appears to be sufficient to sustain them. Nevertheless, the defendant is entitled to a trial without any error of sufficient substance that in its absence there is a reasonable likelihood that there would have been a different result. We cannot conclude with assurance that the joinder of these three offenses, and allowing the jury to hear evidence of all three of them together in a single trial did not so affect the proceeding as to deprive the defendant of a fair trial.

*Id.* at 1328.

However, *Gotfrey* is inapposite to the case at bar. In that case, the court held that defendant was denied due process solely on the basis of the trial court's misjoinder of three charges against him. In the case at bar, since we have already determined that joinder was proper, Lee's claim is without merit.

## V. CONCLUSION

In conclusion, we hold: (1) the trial court applied the proper standard in ruling on Lee's motion to sever; (2) the trial court did not abuse its discretion in denying Lee's motion to sever the charges of aggravated robbery; and (3) because the trial court properly joined the charges, Lee was not denied due process.

GARFF and GREENWOOD, JJ., concur.