R.C. TOLMAN, an individual; Eaglebrook Corporation, a Utah corporation; and Lava Bluff Water Company, Inc., a Utah corporation, Plaintiffs, Appellant, and Cross-appellees,

v.

WINCHESTER HILLS WATER COMPANY, INC., Defendant, Appellee, and Cross-appellant.

No. 930761–CA.

Court of Appeals of Utah.

Feb. 23, 1996.

Gary L. Paxton and Susannah E. Kesler, Salt Lake City, for Appellant Tolman.

Jeffrey C. Wilcox, St. George, for Appellee.

Before BILLINGS, JACKSON, and WILKINS, JJ.

## AMENDED OPINION [1]

BILLINGS, Judge:

R.C. Tolman appeals the trial court's award of attorney fees. Winchester Hills Water Company (WHWC) cross-appeals the trial court's water rights rulings. We affirm.

## FACTS

In 1979, a group of individuals organized Shad Investment and Development Company (SIDCO) to develop the Winchester Hills subdivision in Washington County, Utah. In 1980, this group organized WHWC to provide water service to the subdivision. By the mid–1980s, Russell Walter and R.C. Tolman remained as the only owners and director-officers of both corporations.

In 1989, Tolman and Walter, in order to terminate their business relationship, entered into a Water Agreement and a Settlement Agreement which were retroactively effective to December 31, 1988. Under the Settlement Agreement, Tolman and Walter agreed that SIDCO would transfer one-half of its assets and liabilities to Eaglebrook Corporation, and that Tolman would own 100 percent of the Eaglebrook stock. Tolman would then surrender his SIDCO stock and Walter would own 100 percent of SIDCO. As part of the separation of assets, each party received undeveloped lots in Winchester Hills. Under the Water Agreement, the parties also agreed that Winchester Hills' water production, storage, and delivery system would be divided and assigned one-third to WHWC, one-third to SIDCO, and one-third to Eaglebrook. SIDCO and Eaglebrook agreed they would turn over their respective one-third interests in WHWC's

water system to WHWC proportionally when and if they developed lots.

Many post-agreement disputes arose between Tolman and the other entities. In July 1989, Tolman attempted to circumvent a WHWC building moratorium by forming Lava Bluff Water Company and transferring Eaglebrook's one-third interest in WHWC's water system to that company.

Disputes between WHWC and Tolman continued and this lawsuit was eventually filed. Tolman and his companies, Eaglebrook and Lava Bluff, as plaintiffs, sued WHWC for damages for WHWC's use of Lava Bluff's one-third interest in WHWC's water system. WHWC, as defendant, counterclaimed for a return of Lava Bluff's one-third interest in WHWC's water system, a transfer of twenty-five acre feet of water from Tolman as a result of the alleged shortfall at the time of his separation of business relations with Walter, damages for Tolman's unauthorized use of WHWC water and unpaid WHWC water-stock assessments, and attorney fees from Tolman resulting from WHWC's defense of Lava Bluff's claims.

The parties' claims were tried to a jury. At the close of plaintiffs' case, the trial court granted WHWC's motion for a directed verdict on the claim that WHWC damaged Lava Bluff by its use of Lava Bluff's one-third interest in WHWC's water system. At the close of WHWC's case, the trial court granted Tolman's motion for a directed verdict on the issue of Tolman's transfer of twenty-five acre feet of water to WHWC. Also, Lava Bluff stipulated that it would reconvey its one-third interest in WHWC's water system back to Eaglebrook, and the court imposed a constructive trust on Eaglebrook's title to that interest for the benefit of WHWC. The issues of damages and attorney fees were submitted to the jury.

The jury found that Tolman damaged WHWC as a result of his unauthorized use of WHWC water and that he was responsible for WHWC's attorney fees under the third-party attorney fees rule. Tolman appeals the award of attorney fees.

1. This Amended Opinion replaces the Opinion in

Case No. 930761–CA issued on February 8, 1996.

WHWC cross-appeals the trial court's directed verdict as to the twenty-five acre feet shortfall it claims Tolman owes it and the trial court's imposition of a constructive trust on the other disputed water shares.

## I. ATTORNEY FEES

■ On appeal, Tolman argues the award of attorney fees to WHWC was error.[2] Tolman claims there was privity of interest between himself and Lava Bluff, and thus the trial court erred by allowing the third-party tort attorney fees issues to go to the jury or, at the least, by improperly instructing the jury on this issue. WHWC responds that Tolman did not raise the privity issue nor object to the attorney fees instructions at trial and thus cannot raise this issue for the first time on appeal.

■ Rule 51 of Utah's Rules of Civil Procedure states "[i]n objecting to the giving of an instruction, a party must state distinctly the matter to which he objects and the grounds for his objection." Utah R.Civ.P. 51; *see Godesky v. Provo City Corp.,* 690 P.2d 541, 546 (Utah 1984). Utah courts have repeatedly held that an objection must "be specific enough to give the trial court notice of the very error ... complained of and that an objection couched in language such as 'the instruction is not suggested by and is contrary to the law,' or like terms, lacks the specificity required by the rule." *Beehive Medical Elecs., Inc. v. Square D Co.,* 669 P.2d 859, 860 (Utah 1983) (footnote omitted); *see Morgan v. Quailbrook Condo. Co.,* 704 P.2d 573, 579 (Utah 1985); *Godesky,* 690 P.2d at 546–47; *Redevelopment Agency v. Barrutia,* 526 P.2d 47, 51 (Utah 1974). Although this rule "serves the purpose of preserving the objection for appeal," *Nielsen v. Pioneer Valley Hosp.,* 830 P.2d 270, 271 (Utah 1992); *see Morgan,* 704 P.2d at 579, its primary purpose "is to direct the attention of the

court to the claimed errors in the instruction so that [the court] might have an opportunity to correct them if [the court] deems it proper." *Barrutia,* 526 P.2d at 51; *accord Nielsen,* 830 P.2d at 271; *Godesky,* 690 P.2d at 547; *Beehive Medical,* 669 P.2d at 861.

Tolman's attorney made a blanket objection that he did not believe the law allowed attorney fees "in any way in this particular case" and somewhat more specifically objected that the law did not allow attorney fees as damages in breach of fiduciary duty situations. Tolman did not alert the court to the claim he now makes on appeal that the third-party attorney fees rule was inapplicable because of privity between Lava Bluff and himself. Therefore, the trial court never determined whether privity of parties existed under the facts in this case.

WHWC contends and we agree that Tolman's actions at trial were similar to those of the plaintiff in *Collier v. Frerichs,* 626 P.2d 476 (Utah 1981). In *Collier,* the plaintiff tried to argue on appeal that failure to drive at a prudent speed constituted negligence as a matter of law. *Id.* at 477. The supreme court noted, "He neither objected to the stock instruction on negligence ... nor proposed an instruction that Defendant was negligent as a matter of law. No motion was made for a directed verdict or for a judgment notwithstanding the verdict.... Nor did Plaintiff propose an instruction directing the jury to find negligence." *Id.* (citations omitted). The court thus refused to address the issue on appeal.

As in *Collier,* Tolman failed to object specifically to the jury instructions on privity grounds, failed to submit instructions on privity to refute the application of the third-party attorney fees rule, and also failed to argue the privity exception in any motions to the court.[3] We therefore refuse to consider

---

**2.** Tolman admits that Utah recognizes attorney fees under the "third-party tort rule." Under this rule, "it is settled that when the natural consequence of one's negligence is another's involvement in a dispute with a third party, attorney fees reasonably incurred in resolving the dispute are recoverable from the negligent party as an element of damages." *South Sanpitch Co. v. Pack,* 765 P.2d 1279, 1282–83 (Utah App.

1988). WHWC seeks only those fees incurred in litigation against entities to undo the problems that Tolman negligently caused by his breach of fiduciary duty.

**3.** We note that Tolman has retained new counsel for this appeal.

this issue for the first time on appeal.[4]

## II. WATER SHORTFALL

■ WHWC cross-appeals the trial court's directed verdict ruling that Tolman did not owe WHWC twenty-five acre feet of water upon his separation of business relations with Walter.[5]

■ On appeal from a directed verdict, "[w]e must examine the evidence in the light most favorable to the losing party, and if there is a reasonable basis in the evidence and in the inferences to be drawn therefrom that would support a judgment in favor of the losing party, the directed verdict cannot be sustained." *Management Comm. v. Graystone Pines, Inc.*, 652 P.2d 896, 898 (Utah 1982). "In directing a verdict, the court is not free to weigh the evidence and thus invade the province of the jury." *Id.* at 897. Rather, "[a] directed verdict is only appropriate when the court is able to conclude as a matter of law, that reasonable minds would not differ on the facts to be determined from the evidence presented." *Id.* at 897–98.

The trial court ruled "WHWC agreed to be bound by the [Water] Agreement. Pursuant to the [Water] Agreement, WHWC agreed that it owned sufficient water to service [the developed lots] in the Winchester Hills area." The court stated from the bench "there is nothing in that agreement that says that Mr. Tolman or Eaglebrook or Lava Bluffs is responsible for making sure that [WHWC] had adequate water.... That responsibility, under all the agreements, falls squarely on the shoulders of SIDCO. They're the ones who agreed to provide the water."

■ We agree with the trial court that WHWC did not advance a legal theory to the court to circumvent the applicability of the Water Agreement. Although WHWC submitted testimony that there were discussions about the shortfall between Walter and Tolman at the time of their separation and Walter testified that the Water Agreement contained a calculation error, WHWC never argued or proved there was a mistake that legally voided the agreement. "The 'mere mention' of an issue without introducing supporting evidence or relevant legal authority does not preserve that issue for appeal." *State v. Brown*, 856 P.2d 358, 361 (Utah App.1993) (quoting *LeBaron & Assoc. v. Rebel Enters.*, 823 P.2d 479, 483 (Utah App. 1991)).

WHWC failed to provide the court with a legal theory to prevent enforcement of the clear language of the Water Agreement. Therefore, the trial court properly directed a verdict in favor of Tolman and Eaglebrook.

## III. CONSTRUCTIVE TRUST

■ Finally, the trial court required Lava Bluff to return the one-third interest in WHWC's water system to Eaglebrook, and required Eaglebrook to hold the interest in a constructive trust for the benefit of WHWC according to the terms of the Water Agreement. WHWC appeals the trial court's imposition of the constructive trust on Eaglebrook, contending the trial court should have required Eaglebrook to transfer its one-third

---

4. As a result of the outcome we reach today, we also dispose of WHWC's Rule 23 motion and conclude all costs incurred in this action should be released to WHWC.

5. Tolman argues that WHWC waived its challenge to the directed verdict on appeal because WHWC made its claim at trial against Tolman and not Eaglebrook. We disagree.

WHWC's claim at trial was against "Tolman, through Eaglebrook." Eaglebrook was a party to the litigation. The trial transcript shows both parties and the court used Tolman and Eaglebrook interchangeably concerning the return of the water shares. More importantly, the trial judge, in his bench ruling on the directed verdict, stated "there is nothing in that [Water] [A]greement that says that *Mr. Tolman or Eaglebrook or Lava Bluffs* is responsible for making sure that [WHWC] has adequate water." (Emphasis added.)

WHWC properly raised a claim against Eaglebrook at trial. In its bench ruling, the court concluded that neither Tolman nor Eaglebrook were liable to WHWC for the water shortfall. The court's subsequent written ruling, which specified only Tolman, should not restrict WHWC's right to appeal an issue that was properly argued before the trial court. We therefore reach the merits of WHWC's claim that the trial court improperly directed a verdict in favor of Tolman and Eaglebrook.

interest in the water system directly to WHWC.

■■■■ We can reverse the trial court's imposition of a constructive trust only for an abuse of discretion. *Thurston v. Box Elder County*, 892 P.2d 1034, 1041 (Utah 1995). This court will only conclude the trial court abused its discretion if the ruling was "beyond the limits of reasonability." *State v. Hamilton*, 827 P.2d 232, 239–40 (Utah 1992).

■■■■ A constructive trust is an equitable remedy to prevent unjust enrichment in the absence of any express or implied intention to form a trust. *In re Estate of Hock*, 655 P.2d 1111 (Utah 1982); *see* Restatement of Restitution § 160 cmt. c (1937). "A court of equity in decreeing a constructive trust, is bound by no unyielding formula, but is free to effect justice according to the equities peculiar to each transaction wherever a failure to perform a duty to convey property would result in unjust enrichment." *Haws v. Jensen*, 116 Utah 212, 209 P.2d 229, 232 (1949).

WHWC relies on the Restatement's pronouncement that a constructive trust should restore the property to the party who has been "unjustly deprived" and take property from the party who has been "unjustly enriched." "[I]n other words[,] the effect is to ... put each of them in the position in which he was before the defendant acquired the property." Restatement of Restitution § 160 cmt. d (1937).

■■■ WHWC cannot expect to be placed in a better position than it agreed to under the Water Agreement.[6] Under the Water Agreement, WHWC would have received its interest in the water proportionally as Eagle-

brook developed more lots in the Winchester Hills subdivision. The trust required Eaglebrook to hold legal title to the one-third interest for the benefit of WHWC according to the terms of the Water Agreement. As such, Eaglebrook is required, as the Water Agreement states, to transfer the interest to WHWC proportionally as it develops further in the Winchester Hills area. Thus, the constructive trust is a temporary vehicle to carry out the terms of the parties' agreement, and the court has returned WHWC to the position it would have been in had Eaglebrook properly carried out the terms of the Water Agreement. Therefore, we find the terms of the court's ruling reasonable.

## CONCLUSION

We hold Tolman cannot raise the issue of privity before this court, having not raised the issue before the trial court. We therefore affirm the attorney fees award. In addition, we hold the trial court's directed verdict regarding the alleged water shortfall was correct under the clear language of the Water Agreement. Also, we conclude the trial court reasonably imposed a constructive trust on Eaglebrook for the benefit of WHWC according to the terms of the Water Agreement. We therefore affirm.

JACKSON and WILKINS, JJ., concur.

---

6. WHWC now claims the terms of the Water Agreement are unfair and are one-sided. However, it is not the prerogative of this court to prevent the enforcement of contracts that a party subsequently regrets. *Ted R. Brown and Assocs.*

*v. Carnes Corp.*, 753 P.2d 964, 970–71 (Utah App.1988) ("[A] court may not make a better contract for the parties than they have made for themselves ....").