STATE of Utah, Plaintiff and Appellee,

v.

Alan Bosworth SMITH, Defendant and Appellant.

No. 950640–CA.

Court of Appeals of Utah.

Nov. 7, 1996.

Linda M. Jones and Roger K. Scowcroft, Salt Lake City, for Appellant.

Jan Graham and Thomas B. Brunker, Salt Lake City, for Appellee.

Before ORME, DAVIS and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Alan B. Smith appeals his conviction for tampering with evidence in violation of Utah Code Ann. § 76–8–510 (1995). We affirm.

## FACTS

"On appeal, we recite the facts in the light most favorable to the jury's verdict." *State v. Burk,* 839 P.2d 880, 882 (Utah App.1992), *cert. denied,* 853 P.2d 897 (Utah 1993).

During a gathering at Smith's trailer home on the evening of February 20, 1995, a group of people, including John C. Barrett, drank alcohol and ingested drugs. At a point between 10:00 p.m. and 1:00 a.m., Barrett collapsed. Some of the guests suggested calling 911, but no one did. Attempting to revive Barrett, one of the guests administered cardiopulmonary resuscitation, then Smith and others moved Barrett to a bathtub with cold water. Afterward, Smith helped wrap Barrett in a blanket and move him to a bed. Around 3:00 a.m., Smith's two remaining guests—Valerie Mackert and Othello Gerety—heard Barrett breathing as well as snoring. However, during the early morning hours, Barrett died from the toxic mixture of cocaine, heroin, and alcohol in his system.

Sometime between Barrett's collapse and morning, Smith directed Mackert and Gerety to clean up the drug paraphernalia lying about the trailer. They placed the paraphernalia in a garbage bag. Having checked on Barrett and believing him to be dead, at about 11:00 a.m. Smith took the bag of gar-

bage and paraphernalia and drove with Mackert and Gerety to a convenience store about forty-five blocks away, where he threw the bag into the store's dumpster. After running other errands, Smith and Mackert returned to the trailer. Smith called 911 shortly before 3:30 p.m. to report Barrett's death.

Police officers arrived to investigate Barrett's death and questioned Smith. Detective Alex Huggard later took Smith to the police station. Between interviews there, Smith led Detective Huggard to the dumpster to retrieve the bag containing the paraphernalia.

■ Regarding Barrett's death, the State charged Smith with manslaughter, failing to report a dead body, and evidence tampering. The jury acquitted Smith of manslaughter, but convicted him of failing to report a dead body and evidence tampering. The trial court later granted Smith's motion to dismiss the charge of failing to report a dead body, but denied his motion to dismiss the evidence tampering charge. Smith now appeals his conviction for tampering with evidence, arguing the State presented insufficient evidence to support his conviction and the trial court should have granted his motion to sever the charges against him.[1]

## ANALYSIS

### I. Sufficiency of Evidence

■ Smith asserts the evidence introduced at trial was insufficient to support the jury's verdict.[2] We reverse the jury's verdict in a criminal case when we conclude as a matter of law that the evidence was insufficient to warrant conviction. *State v. Harman*, 767 P.2d 567, 568 (Utah App.1989).

Nevertheless, "the standard for reversal is high." *Id.* We will reverse only if the evidence is so " 'inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime.' " *Id.* (quoting *State v. Petree*, 659 P.2d 443, 444 (Utah 1983)); *accord State v. Bradley*, 752 P.2d 874, 876 (Utah 1985). We review from a perspective most favorable to the verdict the evidence and all inferences reasonably drawn from the evidence, recognizing that determinations regarding witness credibility are solely within the jury's province. *Harman*, 767 P.2d at 568.

■ Though this standard presents a formidable hurdle to the criminal appellant, it is not insuperable. *Id.* "We will not make 'speculative leap[s] across ... gap[s]' in the evidence." *Id.* (quoting *Petree*, 659 P.2d at 445). To affirm the jury's verdict, we must be sure the State has introduced evidence sufficient to support all elements of the charged crime. *Id.*

We begin our review by setting out the elements of the crime of evidence tampering. The controlling statute states, in pertinent part, that "[a] person commits a felony of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he ... [a]lters, destroys, conceals, or removes anything with a purpose to impair its verity or availability in the proceeding or investigation." Utah Code Ann. § 76–8–510 (1995).

■ Detective Huggard's testimony regarding his unrecorded first interview with Smith was the primary evidence proving the elements of this crime. Huggard testified Smith told him that

---

1. Smith also challenges the admission at his trial of Gerety's testimony from the preliminary hearing. The trial court determined she was an unavailable witness under Utah Rule of Evidence 804(a)(5) and thus allowed her prior testimony to be read into evidence under Rule 804(b)(1), an exception to the hearsay rule. Because her testimony was not necessary to support the evidence tampering charge, the trial court's error, if any, in admitting her prior testimony was harmless. In other words, we do not believe a more favorable result was reasonably likely for Smith without her testimony. *See State v. Featherson*, 781 P.2d 424, 431 (Utah 1989).

2. Smith's sufficiency-of-evidence argument incorporates a question of statutory construction. He maintains the evidence tampering statute implies a requirement that the State prove that the evidence with which he tampered was "relevant to establishing or disproving facts in an investigation or proceeding." We have scoured the record and find no mention of this argument before the trial court. Because this issue was not preserved for appeal, we do not address it. *See Tolman v. Winchester Hills Water Co.*, 912 P.2d 457, 460–61 (Utah App.1996).

Smith directed Othello [Gerety] and Valerie [Mackert] to clean up the house, to get all of the drug paraphernalia, to get all of that out of the house. He told me that he did not want to have to explain to the police, when they came and found a body, about all of the drug paraphernalia.

Huggard further testified:

Smith had told me that the reason that he instructed the clean-up of his trailer was that he did not think that John [Barrett] would make it and he did not want to have the drug paraphernalia there with John when the police come [sic] and found the body.

Huggard's testimony shows Smith believed an official investigation was "pending or about to be instituted," id., the first element of the crime. Smith recognized that once he called to report the dead body in his trailer the police would inevitably investigate the cause of Barrett's death. The second element is met because Smith removed something. It is undisputed that he caused the drug paraphernalia from the party to be cleaned up and placed in a garbage sack, then drove with the sack to a distant convenience store and threw the sack in a dumpster. Finally, Huggard's testimony that Smith "did not want to have the drug paraphernalia there with John when the police come [sic] and found the body" supports the jury's inference that Smith's purpose in removing the paraphernalia was to impair its availability in the police investigation. The third element was thus met.

Still, Smith argues Huggard's testimony regarding their recorded second interview showed Smith's statements were inconsistent with those of their unrecorded first interview and did not support the evidence tampering conviction. He further asserts the jury could have inferred an innocent purpose from Smith's undisputed activities that day—e.g., that he was merely cleaning up after a party, and the trash dumpster was so full he could

not fit the sack containing the paraphernalia there, so he carried it to a convenience store dumpster to dispose of it.

"The presentation of conflicting evidence does not preclude a finding of guilt beyond a reasonable doubt. If so, no defendant could ever be convicted in a criminal case where inconsistent evidence was introduced." State v. Carlsen, 638 P.2d 512, 514–15 (Utah 1981). The jury, within its function as the arbiter of witness credibility, obviously elected to believe the version of the facts from Detective Huggard's testimony about his unrecorded first interview with Smith.[3] See id. at 515.

Accordingly, considered from a perspective most advantageous to the verdict, Detective Huggard's testimony reasonably supports the jury's decision that, believing an official investigation would take place, Smith removed the paraphernalia with the purpose of impairing its availability in the investigation. We therefore conclude sufficient evidence supported Smith's conviction for tampering with evidence.

## II. Severance

Smith next argues the trial court should have granted his motion to sever the charges against him for trial. Specifically, Smith contends the offenses were improperly joined as "otherwise connected together in their commission" under Utah Code Ann. § 77–8a–1(1)(a) (1995). Alternatively, Smith argues that even if the offenses were connected within the meaning of section 77–8a1(1)(a) the trial court should have found he was prejudiced by the joinder and ordered severance under Utah Code Ann. § 77–8a1(4)(a) (1995).[4]

■ The trial court has discretion to grant or deny a severance request. State v. Lopez, 789 P.2d 39, 42 (Utah App.1990). "[W]e reverse a conviction only if the trial judge's refusal to sever charges 'is a clear abuse of discretion in that it sacrifices the defendant's

---

3. Perhaps the jury accepted the State's explanation that Smith was naturally more guarded once the tape recorder was activated.

4. Smith also argues two other grounds upon which severance should have been granted. These involve Rule 9.5 of the Utah Rules of

Criminal Procedure and the Due Process Clause. However, we do not reach those grounds because they were not presented to the trial court and thus were not preserved for appeal. See Tolman, 912 P.2d at 460–61.

right to a fundamentally fair trial.'" *Id.* (quoting *State v. Pierre,* 572 P.2d 1338, 1350 (Utah 1977)). A court should sever charges when it concludes that "'prejudice to the defendant outweighs considerations of economy and practicalities of judicial administration, with doubts being resolved in favor of severance.'" *State v. Jaimez,* 817 P.2d 822, 825 (Utah App.1991) (quoting *State v. Velarde,* 734 P.2d 440, 444–45 (Utah 1986)).

### A. "Connected Together."

■ Smith maintains the offenses with which he was charged should not have been joined because they were not "connected together in their commission."[5] Utah Code Ann. § 77–8a–1(1)(a) (1995). We disagree.

Section 77–8a–1(1) reads:

Two or more felonies, misdemeanors, or both, may be charged in the same indictment or information if each offense is a separate count and if the offenses charged are:

(a) based on the same conduct or are otherwise connected together in their commission; or

(b) alleged to have been part of a common scheme or plan.

*Id.* Because Utah courts have not yet interpreted the phrase "otherwise connected in their commission," we seek guidance from our sibling states and the federal courts in determining how it applies in this case. *See State v. Lee,* 831 P.2d 114, 117 (Utah App.), *cert. denied,* 843 P.2d 1042 (Utah 1992).

We have surveyed cases construing the language at issue in similar fact situations— those in which a defendant's later offense arose out of an attempt to somehow conceal his or her previous criminal activities. Such cases have generally held something akin to what the Kansas Supreme Court has articulated so well: "[W]hen criminal conduct resulting in a second charge is precipitated by a previous charge, the two are sufficiently 'connected together' to allow consolidation for trial," *State v. Pondexter,* 234 Kan. 208, 671 P.2d 539, 546 (1983); *see United States v.*

*Carmichael,* 685 F.2d 903, 910 (4th Cir.1982); *United States v. Scott,* 659 F.2d 585, 589 (5th Cir.1981); *United States v. Bourassa,* 411 F.2d 69, 74–75 (10th Cir.1969); *Bayless v. United States,* 381 F.2d 67, 71–72 (9th Cir. 1967); *State v. Williams,* 183 Ariz. 368, 904 P.2d 437, 444–45 (1995); *State v. Griffin,* 116 N.M. 689, 866 P.2d 1156, 1160 (1993).

Many of these "precipitation cases" seem to share as a common element of their analysis the conclusion that "most of the evidence admissible in proof of one offense is also admissible in proof of the other," *Williams,* 904 P.2d at 444. For example, evidence of the second offense may be admissible to show the defendant's guilty conscience related to the first offense, *see, e.g., id.; Bourassa,* 411 F.2d at 74–75; *State v. Bravo,* 131 Ariz. 168, 639 P.2d 358, 359 (Ariz.Ct.App. 1981). Likewise, evidence of the first offense may be admissible to show the defendant's motive for committing the second offense— i.e., to conceal criminal activities, *see, e.g., Bayless,* 381 F.2d at 72.

The case at bar involves a precipitation situation. Smith failed to report Barrett's dead body and threw the drug paraphernalia in the store dumpster to conceal the illegal drug activities that caused him to be charged with the first offense of manslaughter. Moreover, evidence of each offense was admissible to prove the other offenses. *See Williams,* 904 P.2d at 446. For instance, that Smith attempted to conceal the drug paraphernalia tends to show consciousness of his potential guilt regarding manslaughter. And, evidence of Smith's involvement in Barrett's drug-related death tends to show Smith's motive for evidence tampering—i.e., to conceal the circumstances surrounding Barrett's death. We therefore conclude the charges against Smith were "otherwise connected together in their commission" under Utah Code Ann. § 77–8a–1(1)(a) (1995).

### B. Prejudice

■ Regardless of the connection between the offenses charged, Smith argues the trial court should have granted his severance mo-

---

**5.** Both parties decided these offenses were not "based on the same conduct" or "part of a common scheme or plan" and treated this as an otherwise-connected-together-in-their-commission case.

tion because he was prejudiced by joinder of the counts. " 'The burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed on review. The defendant must show something more than the fact that "a separate trial might offer him a better chance of acquittal." ' " *United States v. Van Scoy*, 482 F.2d 347, 349 (10th Cir.1973) (citations omitted).

The initial inquiry regarding whether a defendant is prejudiced by joinder is "whether evidence of the other crime would have been admissible in a separate trial." *Lee*, 831 P.2d at 118. To determine whether evidence of manslaughter and failing to report a dead body would have been admissible at a separate trial on evidence tampering, we apply Utah Rule of Evidence 404(b), *see id.*, which states:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Utah R.Evid. 404(b).

We have already determined the manslaughter evidence would have been admissible in separate trials for failing to report a dead body and evidence tampering to prove Smith's motive for concealing the drug paraphernalia. That evidence also tended to show that Smith's intent or purpose was not merely to throw out garbage elsewhere because the trailer park's dumpster was full, but was to conceal the illegal activities leading to Barrett's death.[6] *See Lee*, 831 P.2d at 119; *Lopez*, 789 P.2d at 43; *see also Williams*, 904 P.2d at 445 (recognizing defendant may have had other reasons for his actions, but noting alternative explanations go to weight of evidence, not admissibility). Thus, evidence of Smith's other charged offenses would have been admissible under Rule 404(b).

■ Still, the probative value of the evidence must "outweigh its tendency to unfairly prejudice the defendant in order to be admissible" under Utah Rule of Evidence 403.[7] *Lee*, 831 P.2d at 119. Here, the manslaughter evidence was highly probative to show Smith's motive and intent regarding the failure to report a dead body and evidence tampering charges. Without that evidence, the jury would have had no context within which to place either subsequent charge. Indeed, presentation of the manslaughter evidence was the only way the State could effectively provide proof of Smith's motive and intent regarding the other two charged offenses. *See id.*

Consequently, although admission of the manslaughter evidence would naturally prejudice Smith, the evidence's probative value "significantly outweigh[ed] any prejudicial effect," *id.* Further mitigating any prejudice, the trial court specifically instructed the jury to decide each count individually and to ensure the State had proved every element of every charge beyond a reasonable doubt.[8] *See State v. Danker*, 599 P.2d 518, 520 (Utah 1979); *State v. Burk*, 839 P.2d 880, 883–84 (Utah App.1992), *cert. denied*, 853 P.2d 897 (Utah 1993); *see also State v. Martinez–Villareal*, 145 Ariz. 441, 702 P.2d 670, 675 (1985) (holding similar instruction minimized prejudice to defendant); 75 Am.Jur.2d *Trial* § 149 (1991) ("Cautionary instructions to the jury to the effect that each charge or count is to be decided separately or that the evidence should not be considered cumulatively have generally been considered sufficient to prevent prejudice or confusion by the jury

---

**6.** "[I]ntent 'need not be proved by direct evidence, but may be inferred from defendant's conduct and surrounding circumstances.' " *State v. Lopez*, 789 P.2d 39, 43 (Utah App.1990) (quoting *State v. Davis*, 711 P.2d 232, 234 (Utah 1985)).

**7.** Rule 403 reads: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R.Evid. 403.

**8.** Apparently the jury was able to follow this instruction—they acquitted Smith of manslaughter.

where the charges are tried in a single proceeding.").

Because the offenses with which Smith was charged were "otherwise connected together in their commission" and he was not unfairly prejudiced by their joinder, we conclude the trial court did not abuse its discretion in denying Smith's severance motion.

## CONCLUSION

The State presented sufficient evidence to support Smith's conviction for evidence tampering. In addition, the trial court did not abuse its discretion in denying Smith's motion to sever the charges against him. Accordingly, we affirm.

ORME, P.J. and DAVIS, Associate P.J., concur.