STATE of Utah, Plaintiff, Appellee, and Cross–appellant,

v.

Kathleen GILES, Defendant, Appellant, and Cross–appellee.

No. 971289–CA.

Court of Appeals of Utah.

Oct. 8, 1998.

Joan C. Watt and Robin K. Lungberg, Salt Lake City, for Appellant.

Jan Graham, Attorney General, and Joanne C. Slotnik, Assistant Attorney Gener-

al, Criminal Appeals Division, Salt Lake City, for Appellee.

Before Judges BENCH, GREENWOOD, and JACKSON.

## OPINION

BENCH, Judge:

Defendant Kathleen Giles appeals her jury conviction for one count of public assistance fraud relating to food stamp overpayments. The State cross-appeals, arguing that the trial court erred in granting defendant's Motion to Arrest Judgment on the jury's verdict as to the additional count of public assistance fraud relating to Aid to Families with Dependent Children (AFDC) benefit overpayments. We affirm the conviction, reverse on the cross-appeal, and remand to the trial court for sentencing.

## BACKGROUND

■ On appeal from a jury verdict, we review "the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict. We recite the facts accordingly, and present conflicting evidence only to the extent necessary to understand the issues raised on appeal." *State v. Dunn*, 850 P.2d 1201, 1205–06 (Utah 1993) (citations omitted).

In June 1993, a bishop of the Church of Jesus Christ of Latter-day Saints performed a marriage ceremony for defendant and Paul Felicetti. Although defendant had received public assistance benefits before her marriage, she completed a new application in August 1993. On that application, defendant listed only herself and three children as household members. In a subsequent interview with an employee of the Office of Family Support (OFS), defendant represented she was single, as she had earlier indicated on the written application. She did not mention Felicetti. Later, in another interview and on review forms, defendant did not change any information she originally provided. Again, she failed to mention Felicetti as her husband or member of her household. Felicetti's name first appears as a member of defendant's household on a new application for public assistance in May 1994. On this application, and on the review forms that followed, defendant listed Felicetti as her boyfriend and disclosed his employment and income.

Defendant's relationship with Felicetti deteriorated in 1995. In June, Felicetti took the two children the couple had in common, and left defendant's home. Defendant contacted an attorney to help her regain custody of the children and reinstate their benefits. To reinstate the children's benefits, defendant provided OFS with temporary custody papers from her divorce action along with her original marriage license form. As she submitted these documents, defendant told the OFS worker that she was not certain if the marriage was "official." This new information and documentation prompted OFS to investigate defendant's marital status.

In July 1996, the State charged defendant with two counts of public assistance fraud in violation of Utah Code Ann. §§ 76–8–1205 and –1206 (1995). Count I, a second degree felony, alleged defendant failed to disclose material facts regarding her marital status between July 1, 1993 and July 31, 1995, which resulted in AFDC overpayments exceeding $5000. Count II, a third degree felony, alleged defendant failed to disclose her household composition and income between August 1, 1993 and February 28, 1994, which resulted in food stamp overpayments exceeding $1000. At the close of the State's case in chief, defendant moved to consolidate the two counts and to reduce the charge to a class B misdemeanor. The trial court denied these motions, and the jury then convicted defendant as charged. Defendant filed a motion to arrest judgment on Count I, arguing that the State failed to establish she had lawfully married Felicetti and therefore failed to establish she did not disclose material information about the marriage. The trial court granted the motion to arrest judgment on Count I and thereafter sentenced defendant on Count II.

On appeal, defendant claims that (1) the trial court erred in denying the motion to reduce Count II to a misdemeanor; (2) the evidence does not support the jury's verdict on Count II; and (3) if we rule for the State on its cross-appeal, the trial court erred in

denying the motion to consolidate the two counts. The State cross-appeals the trial court's grant of defendant's motion to arrest judgment on Count I, arguing defendant's marriage was valid when it was solemnized.

## ANALYSIS

### Denial of Motion to Reduce Offense Charged

■ Defendant first argues that the trial court erred in denying her motion to reduce Count II, a third degree felony, to a class B misdemeanor. She contends the elements of the felony in sections 76–8–1205 and –1206, under which she was convicted, are wholly duplicative of the elements of the misdemeanor in section 76–8–1203. Defendant therefore urges that, under *State v. Shondel*, 22 Utah 2d 343, 453 P.2d 146 (1969), she is entitled to be sentenced for a misdemeanor offense. "Our review under the *Shondel* rule 'focuses on the trial court's legal conclusions, which we review under a correction-of-error standard, according no particular deference to the trial court's ruling.' " *State v. Kent*, 945 P.2d 145, 146 (Utah Ct.App.1997) (quoting *State v. Vogt*, 824 P.2d 455, 456 (Utah Ct.App.1991)).

■ Under *Shondel*, if two statutes proscribe the same distinct conduct but impose different penalties, the defendant is entitled to receive the lesser penalty. *See Shondel*, 453 P.2d at 147–48; *State v. Duran*, 772 P.2d 982, 987 (Utah Ct.App.1989). The test for determining whether two statutes proscribe identical conduct is whether the "two statutes are wholly duplicative as to the elements of the crime." *State v. Bryan*, 709 P.2d 257, 263 (Utah 1985).

However, if the elements of the crime[s] are not identical and the relevant statutes require "proof of some fact or element not required to establish the other," the statutes do not proscribe the same conduct and [defendant] "may be charged with the crime carrying the more severe sentence," without violating her due process rights under the state and federal constitutions or her equal protection rights under the federal constitution.

*Kent*, 945 P.2d at 147 (quoting *State v. Clark*, 632 P.2d 841, 844 (Utah 1981)).

At the time defendant was charged, section 76–8–1203 provided:

(1) Each person who applies for public assistance shall disclose to the Department of Human Services each fact that may materially affect the determination of his eligibility to receive public assistance, including his current:

(a) marital status;

(b) household composition;

(c) employment;

(d) income;

(e) receipt of monetary and in-kind gifts; and

(f) other resources.

(2) Any person applying for public assistance who intentionally, knowingly, or recklessly *fails to disclose* any material fact required to be disclosed under Subsection (1) is guilty of a class B misdemeanor.

(3) Any recipient who intentionally, knowingly, or recklessly *fails to disclose* to the Department of Human Services any change in a material fact required to be disclosed under Subsection (1), within ten days after the date of the change, is guilty of a class B misdemeanor if that failure to disclose results in an overpayment.

Utah Code Ann. § 76–8–1203 (1995) (emphasis added).

Section 76–8–1205 provides, in pertinent part:

Each of the following persons, who intentionally, knowingly, or recklessly commits any of the following acts, is guilty of public assistance fraud:

. . . .

(11) any person who *obtains an overpayment* by violation of Section 76–8–1203 or 76–8–1204.

Utah Code Ann. § 76–8–1205 (1995) (emphasis added). Section 76–8–1206 then describes the severity of the offense by aggregating the values of the fraudulently obtained overpayments. To secure a felony conviction, the State had to prove that defendant fraudulently obtained overpayments exceeding $1000, elements not included in the section 76–8–

1203 misdemeanor of failing to disclose material facts. Thus the elements of fraudulently obtaining overpayments under sections 76–8–1205 and –1206 are not "wholly duplicative" of the elements of failing to disclose under section 76–8–1203. Because the *Shondel* rule does not apply, the trial court properly denied defendant's motion to reduce Count II to a misdemeanor offense.

### Sufficiency of the Evidence

■ Defendant next argues that the evidence presented at trial was insufficient to support the conviction of obtaining food stamp overpayments exceeding $1000. "We reverse the jury's verdict in a criminal case when we conclude as a matter of law that the evidence was insufficient to warrant conviction." *State v. Smith*, 927 P.2d 649, 651 (Utah Ct.App.1996). Furthermore, "[w]e will reverse only if the evidence is so ' "inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime." ' " *Id.* (quoting *State v. Harman*, 767 P.2d 567, 568 (Utah Ct.App.1989) (quoting *State v. Petree*, 659 P.2d 443, 444 (Utah 1983))).

■ Defendant asserts the evidence is insufficient to establish Felicetti was a member of defendant's household because the State did not prove he shared food with the family. The term "household" is not defined in the statutes governing public assistance fraud; we therefore look to the common usage of the term. *See Zoll & Branch, P.C. v. Asay*, 932 P.2d 592, 594 (Utah 1997) ("The fundamental rule of statutory construction is that statutes are generally to be construed according to their plain language."). The dictionary defines "household" as "[a] domestic establishment including the members of a family and others who live under the same roof." *Webster's II New College Dictionary* 536 (1995). Using this common definition, Felicetti was a member of defendant's household if he lived with the family.

At trial, the State introduced an income statement for Felicetti, showing he was employed during the time period alleged in Count II. Additionally, the apartment manager testified that defendant and her children lived with Felicetti, as a family, in one apartment during the time in question. The State also introduced a one-year lease agreement for the apartment, dated August 1, 1993, in which Paul Felicetti is listed as the lessee and the tenants listed include Paul and Kathy Felicetti and three children. Alex Yei, an auditor for the Office of Recovery Services, testified that based on Felicetti's earnings while living with defendant, she had received food stamp overpayments amounting to $1424. Yei based his calculations on the assumption that Felicetti was a member of the household.

With this evidence and the reasonable inferences that may be drawn from it, the jury had sufficient evidence to conclude defendant committed public assistance fraud by failing to disclose household composition and income, resulting in overpayments exceeding $1000. Accordingly, we will not disturb the jury's verdict on Count II.

### Arrest of Judgment

■ The State cross-appeals the trial court's grant of defendant's motion to arrest judgment on Count I, a second degree felony. The jury convicted on Count I, finding that defendant's failure to disclose her marital status resulted in her fraudulently receiving AFDC overpayments of more than $5000. Defendant filed a Motion to Arrest Judgment on that count, arguing that the State failed to prove defendant was married as a matter of law. The trial court entered the finding "that the marriage is sufficiently flawed by the fact that the report was not returned to the division of vital statistics," and granted defendant's Motion to Arrest Judgment. The State argues that in so ruling, the trial court erred.

The standard for determining whether an order arresting judgment is erroneous is the same as that applied by an appellate court in determining whether a jury verdict should be set aside for insufficient evidence. Under that standard, a trial court may arrest a jury verdict when the evidence, viewed in the light most favorable to the verdict, is so inconclusive or so inherently improbable as to an element of the crime that reasonable minds must have

entertained a reasonable doubt as to that element.

*State v. Workman,* 852 P.2d 981, 984 (Utah 1993).

■ At trial, the bishop testified that on June 19, 1993, he officiated in the marriage of defendant and Paul Felicetti. The bishop further testified that twenty to thirty people witnessed the ceremony. After filling out the necessary parts of the marriage license, the bishop gave the completed form to the couple. He asked them to return the completed license to the county clerk, rather than returning it himself as required by statute. *See* Utah Code Ann. § 30–1–11 (1995) ("The person solemnizing the marriage shall within 30 days thereafter return the license to the clerk of the county whence it is-sued...."). The county clerk never received the completed license.

None of our marriage statutes provide that a marriage is invalid if the license is not properly returned to the county clerk. *See* Utah Code Ann. §§ 30–1–1 through –39 (1995). Sections 30–1–1 and –2 specifically enumerate when a marriage is void or prohibited, but these sections do not invalidate a marriage for failure to return the license. *See id.* §§ 30–1–1 and –2. The penalty for failing to return the completed license is assessed against the officiator. *See id.* § 30–1–11 (stating officiator is guilty of misdemeanor for failing to return license to county clerk after marriage ceremony). Moreover, this court has previously held that, as a matter of law, a marriage begins on the date of its solemnization. *See Walters v. Walters,* 812 P.2d 64, 68 (Utah Ct.App.1991).

In light of the foregoing, we hold that the trial court erroneously granted defendant's motion to arrest judgment when it determined the evidence of a valid marriage was insufficient as a matter of law. We therefore reverse the trial court's order arresting judgment on Count I.

### Consolidation of the Two Counts

■ Defendant urges that if the trial court erroneously arrested judgment on Count I, then the court should have consolidated the two counts. Defendant argues her acts of fraud can constitute only one offense under section 76–8–1206(2), and thus the two counts should have consolidated. Whether defendant was entitled to consolidation of the two separate counts is a question of law, which we review for correctness. *See State v. Patience,* 944 P.2d 381, 390 (Utah Ct.App. 1997) (citing *State v. Pena,* 869 P.2d 932, 936 (Utah 1994)).

Section 76–8–1206(2) provides:

> [T]he value of an offense is calculated by aggregating the values of each instance of public assistance fraud committed by the defendant as *part of the same facts and circumstances or a related series of facts and circumstances.*

Utah Code Ann. § 76–8–1206(2) (1995) (emphasis added). Defendant contends this section mandates that Count I and II be consolidated because both counts arose from her failure to disclose information on the application for public assistance. We disagree.

■ Count I related to defendant's failure to disclose her marital status, resulting in AFDC overpayments. The value associated with Count I was calculated by adding together overpayments defendant received each time she failed to disclose her marital status. The public assistance fraud under Count I was therefore properly aggregated. Similarly, the total amount connected with food stamp overpayments in Count II was properly aggregated for each time defendant failed to disclose her household composition and income. Therefore, each factually related incident of public assistance fraud was properly aggregated in value under section 76–8–1206(2). Accordingly, the trial court properly denied defendant's motion to consolidate the two charges.

### CONCLUSION

We affirm defendant's conviction for public assistance fraud on Count II, a third degree felony. We hold that the trial court properly denied defendant's motion to reduce the offense to a misdemeanor, and that the evidence supports the jury's verdict. We also affirm the trial court's denial of defendant's motion to consolidate the two counts.

We reverse the trial court's grant of the motion to arrest judgment on Count I. Accordingly, we remand the case to the trial court for entry of judgment and sentencing on Count I, public assistance fraud, a second degree felony.

GREENWOOD and JACKSON, JJ., concur.