2010 UT App 30

STATE of Utah, Plaintiff and Appellee,

v.

James Eric VERDE, Defendant and Appellant.

No. 20080842–CA.

Court of Appeals of Utah.

Feb. 11, 2010.

Linda M. Jones, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Marian Decker, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges McHUGH, BENCH, and GREENWOOD.[1]

OPINION

BENCH, Senior Judge:

¶ 1 Defendant James Eric Verde appeals from a jury conviction for sexual abuse of a child, a second degree felony, see Utah Code Ann. § 76–5–404.1(2)–(3) (2008), and challenges the trial court's decision to admit evidence of other crimes, wrongs, or bad acts.[2] Defendant argues that this bad acts evidence was not admissible pursuant to rule 404(b) of the Utah Rules of Evidence because it was not presented for a proper noncharacter purpose, it was not relevant, and it was more prejudicial than probative. Because specific intent was an element of the crime at issue in this case, we conclude that the trial court properly admitted the bad acts evidence for the proper noncharacter purpose of showing intent and that the evidence was both relevant and probative. We therefore affirm.

BACKGROUND

¶ 2 In 2005, Defendant was charged with sexually abusing N.H., a thirteen-year-old boy. The charges stemmed from an incident that occurred in the summer of 2003, when Defendant allegedly put his hand down N.H.'s pants and fondled N.H.'s genitalia. Defendant pleaded not guilty to the charge.

¶ 3 Prior to trial, the State filed a motion in limine, requesting that the trial court admit testimony from three other males—M.A., J.T.S., and B.P.—who claimed that Defendant had also sexually abused them. In its supporting memorandum, the State proffered the anticipated testimony of N.H. and the three other males. The State argued that

the admission of this testimony was proper under rule 404(b) of the Utah Rules of Evidence for the noncharacter purpose of demonstrating Defendant's "knowledge, intent, plan, modus operandi, and/or absence of mistake or accident." At oral argument, the State emphasized the admissibility of the evidence for the noncharacter purpose of proving modus operandi or specific intent.

¶ 4 After taking the State's motion under advisement, the trial court granted the motion with respect to the testimony of M.A. and J.T.S. but denied the motion as to the testimony of B.P. In a detailed memorandum decision, the trial court determined that the testimony was admissible for the proper noncharacter purpose of showing Defendant's intent "because specific intent is an element of the offense at issue." The trial court also briefly noted that the testimony would be admissible, in the alternative, for showing "a pattern of behavior ... [in which] Defendant prepared and planned to meet minor males with a motive of enticing them into sexual relationships." The trial court did not admit B.P.'s testimony, however, because of concerns regarding the prejudicial effect of cumulative evidence and because it found the six-year time period between B.P.'s alleged abuse and N.H.'s alleged abuse made B.P.'s testimony less probative.

¶ 5 The trial court later denied the State's subsequent motion to admit testimony of an additional male, D.J.W., who claimed to have been sexually abused by Defendant in 2002. Although the trial court found the evidence to be relevant, it determined that the cumulative nature of the evidence would make it more prejudicial than probative.

¶ 6 At trial, N.H. testified that he met Defendant in the fall of 2001 after Defendant moved into a home across the street from N.H.'s home. On the same day they met, Defendant took N.H. to a local carnival.

---

1. Judges Russell W. Bench and Pamela T. Greenwood participated in this case as regular members of the Utah Court of Appeals. They both retired from the court on January 1, 2010, before this decision issued. Hence, they are designated herein as Senior Judges. See Utah Code Ann. § 78A–3–103(2) (2008); Supreme Ct. R. of Prof'l Practice 11–201(6).

2. Due to the lengthy history of this case, several judges presided over the various proceedings. Judge Terry L. Christiansen presided over the pretrial hearings and made the rulings on both of the State's motions in limine. Judge Stephen L. Henriod presided over the trial, and Judge Mark S. Kouris presided over the post-trial matters, including Defendant's motion for a new trial.

N.H. testified that he went to Defendant's house a few times each month to play basketball or video games. On a few occasions, N.H. was allowed to ride Defendant's 4-wheelers. Defendant would also pay N.H. to do occasional yard work. N.H. stated that during one of his visits, Defendant tried to show him a pornographic magazine.

¶ 7 In the summer of 2003, N.H. went to Defendant's home either to play video games or to watch a movie. N.H. sat on Defendant's couch, and Defendant sat next to him. N.H. testified that Defendant put his hand down N.H.'s pants and touched his penis and testicles. N.H. told him not to do that. Defendant pulled his hand out of N.H.'s pants, said something to the effect of "don't be cool," and moved to a chair. N.H. finished what he was doing and left Defendant's home. A year and a half later, N.H. told his mother what had happened.

¶ 8 J.T.S. next testified about his interactions with Defendant. He first met Defendant in approximately 2000 when he was fifteen years old. J.T.S. was working as a grocery store bagger, and Defendant was a customer at the store. J.T.S. testified that Defendant would initiate conversations with him when Defendant went through the check-out line. Defendant invited him to play basketball and on one occasion gave him a pair of sunglasses.

¶ 9 J.T.S. quit work at the grocery store and did not see Defendant again until the spring of 2004 when J.T.S. was eighteen years old. Defendant saw J.T.S. at a store and noticed that his car was for sale. Defendant expressed interest in purchasing it and insisted that J.T.S. come to Defendant's house so Defendant could test drive the vehicle. When J.T.S. arrived at Defendant's home, Defendant invited him in, offered him a drink of soda, and showed him around the house. Defendant offered to let J.T.S. live there and briefly talked about the two of them pursuing some sort of out-of-state business opportunity together. J.T.S. testified that Defendant began talking about trust in friendship, specifically that guy friends could

touch each other in sexual places and that it did not mean they were gay. As they sat on Defendant's couch, Defendant told J.T.S. that he wanted them to be that type of friends, and he began touching J.T.S.'s knee and thigh. Defendant touched J.T.S.'s penis over and then under J.T.S.'s clothing. J.T.S. attempted to stop Defendant, but Defendant used force and J.T.S. became scared.[3] On returning to his own home, J.T.S. told his parents and reported the incident to the police.

¶ 10 M.A. then presented his testimony. He met Defendant at a gym in 2002 when M.A. was eighteen years old. M.A. testified that Defendant approached him, invited him to hang out, and indicated that he had friends M.A.'s age. Defendant obtained M.A.'s phone number and later called him. M.A. described Defendant's tone in the phone calls as aggressive. Defendant, M.A., and a couple other guys met once for lunch and, on a separate occasion, cruised State Street.

¶ 11 In approximately July 2002, Defendant invited M.A. to his house. Upon M.A.'s arrival, Defendant gave M.A. a tour of the house and offered to let M.A. stay there. Defendant told M.A. that he was looking for a little brother with whom he could have a business partnership, have fun, and enjoy life together. M.A. testified that Defendant spoke casually about sexual things, such as describing a penis as just "a piece of skin." Defendant told M.A. stories about Defendant and Defendant's friend "going out and ... exposing themselves in public places" and about an incident "in New York ... [in which] they were both receiving ... oral sexual pleasure and they were high fiving each other." Defendant commented that he and his friend were open with their penises and it was not a big deal. Defendant then asked M.A. if he trusted him and proceeded to grab M.A.'s leg, moving his hand close enough to M.A.'s groin to arouse M.A. M.A. testified that at that point, he knew Defendant's intentions and terminated their en-

---

3. On cross-examination, defense counsel elicited additional testimony from J.T.S., which included the fact that Defendant performed oral sex on J.T.S., penetrated J.T.S.'s anus with his fingers, and showed him a pornographic magazine.

counter. M.A. later made a report to the police.[4]

¶ 12 Defendant also testified at trial. He denied touching N.H., M.A., or J.T.S. in a sexual manner. Although he did not deny being alone with N.H., M.A., or J.T.S. on the dates of the three alleged incidents, he gave a different version of the interactions. Defendant claimed M.A. and J.T.S. initiated the interactions with him, essentially seeking him out. Defendant also suggested that N.H. may have been upset with him for not paying him for catching a stray cat, that N.H. himself often talked about sexual things, and that N.H. exposed himself to Defendant on the day of the alleged incident.

¶ 13 The jury found Defendant guilty of sexually abusing N.H. After the trial court denied Defendant's motion for a new trial, Defendant filed this appeal.

## ISSUE AND STANDARD OF REVIEW

¶ 14 Defendant claims that the trial court erred by admitting the testimony of M.A. and J.T.S. and that the error affected the outcome of the proceedings against him. " '[W]e review a trial court's decision to admit evidence under rule 404(b) of the Utah Rules of Evidence under an abuse of discretion standard.' " *State v. Marchet*, 2009 UT App 262, ¶ 19, 219 P.3d 75 (alteration in original) (quoting *State v. Nelson–Waggoner*, 2000 UT 59, ¶ 16, 6 P.3d 1120). "In doing so, '[w]e review the record to determine whether the admission of other bad acts evidence was scrupulously examined by the trial judge in the proper exercise of that discretion.' " *Id.* (alteration in original) (quoting *Nelson–Waggoner*, 2000 UT 59, ¶ 16, 6 P.3d 1120).

## ANALYSIS

¶ 15 Defendant asserts that the bad acts evidence presented at trial should not have been admitted because it served no purpose other than to show a bad character and propensity to commit crime. Rule 404(b) of the Utah Rules of Evidence states, "Evidence of other crimes, wrongs or acts is not

admissible to prove the character of a person in order to show action in conformity therewith." Utah R. Evid. 404(b). Bad acts evidence may be admitted, however, for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

¶ 16 "The Utah Supreme Court has established a three-part test for assessing whether evidence of other crimes, wrongs, or acts is admissible under rule 404(b)." *State v. Balfour*, 2008 UT App 410, ¶ 22, 198 P.3d 471. First, "the trial court must ... determine whether the bad acts evidence is being offered for a proper, noncharacter purpose, such as one of those specifically listed in rule 404(b)." *Nelson–Waggoner*, 2000 UT 59, ¶ 18, 6 P.3d 1120. "Second, the court must determine whether the bad acts evidence meets the requirements of rule 402 [of the Utah Rules of Evidence], which permits admission of only relevant evidence." *Id.* ¶ 19. "Finally, the trial court must determine whether the bad acts evidence meets the [probative value] requirements of rule 403 of the Utah Rules of Evidence." *Id.* ¶ 20.

¶ 17 Defendant claims that the trial court erred in determining that the bad acts evidence would be admissible for purpose of demonstrating intent. Specifically, Defendant asserts that his intent was never at issue because his defense was that he never touched N.H., not that he touched N.H. but the touching was an accident or that his intentions were noncriminal.

¶ 18 While Defendant may not have directly contested his mental state, intent was clearly at issue. Defendant pleaded not guilty to a specific intent crime, sexual abuse of a child, which required the State to prove beyond a reasonable doubt not only that he "touch[ed] the ... genitalia of a child" but also that he did so "with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person." Utah Code Ann. § 76–5–404.1(2) (2008). "While admis-

---

4. In his 2002 police report, M.A. stated that Defendant had actually touched his penis. At trial, however, M.A. stated he could not precisely recall that part of his encounter with Defendant because of his desire to forget the encounter as well as the passage of time.

sibility [of evidence under rule 404(b)] depends, in part, upon the defenses raised, the general assumption is that '[b]y pleading not guilty, defendant placed all elements of the crime at issue, including ... intent.'" *Balfour*, 2008 UT App 410, ¶ 23, 198 P.3d 471 (second alteration and omission in original) (quoting *State v. Widdison*, 2000 UT App 185, ¶ 33, 4 P.3d 100); *see also State v. Bradley*, 2002 UT App 348, ¶ 23, 57 P.3d 1139 (Davis, J., lead opinion) ("[B]ecause specific intent is an element of the offense, [the defendant]'s intent was at issue during trial."); *State v. Teuscher*, 883 P.2d 922, 927 (Utah Ct.App.1994) ("In pleading not guilty, defendant put every element of the charge against her in issue.").[5] Thus, "[w]here specific intent is an element of the crime, the prosecution may introduce evidence of other offenses to establish the element of intent even if the defendant has not" contested his or her mental state. *Teuscher*, 883 P.2d at 927. We therefore agree with the trial court that the bad acts evidence is admissible for the non-character purpose of showing Defendant's intent.

¶ 19 Defendant nonetheless argues that permitting bad acts evidence for the non-character purpose of proving specific intent may render such evidence admissible in more than the "rare" or "narrow circumstances" suggested by the Utah Supreme Court. *See State v. Reed*, 2000 UT 68, ¶ 28 n. 3, 8 P.3d 1025. At some point, the supreme court will undoubtedly weigh in on whether limiting the rule applied here to "specific intent crimes"

is narrow enough. This court, however, is bound to follow our prior decisions. *See State v. Menzies*, 889 P.2d 393, 399 n. 3 (Utah 1994) ("Horizontal stare decisis ... requires that a court of appeals follow its own prior decisions. This doctrine applies with equal force to courts comprised of multiple panels, requiring each panel to observe the prior decisions of another.").[6] Furthermore, the bad acts evidence must also pass the requirements of rules 402 and 403. The relevancy and probative value requirements of rules 402 and 403 operate to narrow the instances where bad acts evidence will be admissible even in cases involving specific intent crimes.

¶ 20 In this regard, Defendant contends that even if the bad acts evidence had a proper purpose, it was not relevant. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Utah R. Evid. 401. In other words, "[e]vidence is relevant if it 'tends to prove some fact that is material to the crime charged[,] other than the defendant's propensity to commit crime.'" *State v. Balfour*, 2008 UT App 410, ¶ 24, 198 P.3d 471 (second alteration in original) (quoting *State v. Decorso*, 1999 UT 57, ¶ 22, 993 P.2d 837). Because M.A.'s and J.T.S.'s testimony tended to make the existence of Defendant's intent to commit sexual abuse against N.H. "more probable or

---

5. We recognize that individual members of this court have expressed the view that a not guilty plea, alone, should not place a defendant's intent at issue and that a defendant must explicitly challenge the specific intent element of the crime in order for bad acts evidence to be admissible for the purpose of proving the defendant's specific intent. *See State v. Bradley*, 2002 UT App 348, ¶ 70, 57 P.3d 1139 (Thorne, J., concurring) (stating that "intent was never really in issue .... [because the defendant] steadfastly denied that the abuse had ever occurred and claimed that the accusations were most likely fabricated by his ex-wife"); *id.* ¶ 80 (Orme, J., concurring specially) ("[M]ore should be required [than having specific intent be an element of a crime] in order to view prior bad acts as bearing on intent."). *But see State v. Rees*, 2004 UT App 51, ¶ 12 & n. 3, 88 P.3d 359 (mem.) (Thorne, J., dissenting) ("Because intent is always at issue in a specific intent crime, the State's assertion [that

its purpose for admitting the prior bad act evidence was to show intent] is sufficient to satisfy the first element [in the rule 404(b) admissibility test].... Because attempt is a crime of specific intent, the State may properly introduce *relevant* prior act evidence to demonstrate [the defendant]'s intent in the instant case." (citation omitted)).

6. In the present case, there is at least one additional ground for admitting the prior bad acts evidence. At trial, Defendant claimed that N.H. had made up the allegation after not being paid for catching a stray cat. The concurring opinions in *State v. Bradley*, 2002 UT App 348, 57 P.3d 1139, held that prior bad acts evidence is also admissible to rebut the defense of fabrication. *See id.* ¶¶ 70, 73 (Thorne, J., concurring); *id.* ¶¶ 80–81 (Orme, J., concurring).

less probable than it would be without the evidence," Utah R. Evid. 401, the trial court did not abuse its discretion in finding it to be relevant to the issue of intent.

¶ 21 Finally, Defendant claims that the probative value of the bad acts evidence was minimal and substantially outweighed by its prejudicial effect. Rule 403 provides that "relevant[ ] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R. Evid. 403. When undertaking this balancing test, we are guided by the factors enumerated in *State v. Shickles*, 760 P.2d 291 (Utah 1988):

> the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*Id.* at 295–96 (internal quotation marks omitted).

¶ 22 Here, the evidence regarding Defendant's acts against M.A. and J.T.S. was relatively strong given that both M.A. and J.T.S. testified in person. *See State v. Marchet*, 2009 UT App 262, ¶ 45, 219 P.3d 75 (indicating that bad acts evidence was strong where other alleged victims of the defendant "testified in person at trial and were available for cross-examination"). The three incidents involved a similar pattern of befriending young males,[7] inviting them to his home, engaging in recreational activities with them, making statements to invoke trust, suggesting that sexual touching is a normal part of male friendships, and actually touching their genitalia. The time period between the other

assaults and the abuse against N.H. was approximately one year, thus making "the evidence ... sufficiently proximate to warrant its admission." *See id.* (noting that the other alleged sexual assaults occurred within one or two years of each other); *see also Decorso*, 1999 UT 57, ¶ 32, 993 P.2d 837 (indicating that a seven-month interval between alleged crimes was "relatively short"). There was a need for the evidence as it would assist the jury in deciding the issue of specific intent and in assessing the credibility of N.H. and Defendant. *See State v. Nelson–Waggoner*, 2000 UT 59, ¶ 30, 6 P.3d 1120 ("The need for the bad acts evidence was great; without it, the trial resolved into a contest of credibility between [the] defendant and [the alleged victim]."). In light of the fact that there was no physical evidence of the offense against N.H. or other eyewitnesses, there was limited alternative proof of Defendant's intent. *See State v. Bradley*, 2002 UT App 348, ¶ 35, 57 P.3d 1139 ("[T]here was no evidence in the record of any alternative proof showing that [the defendant] committed offenses against [the two children] and had the intent to do so. There was no physical evidence of the offenses and there were no eyewitnesses to the offenses besides the child victims themselves."). Furthermore, given that the acts against M.A. and J.T.S. were relatively similar to the acts against N.H., it was unlikely that the evidence would rouse the jury to overmastering hostility against Defendant. *See generally Reed*, 2000 UT 68, ¶ 31, 8 P.3d 1025 ("Such evidence of multiple acts of similar or identical abuse is unlikely to prejudice a jury.").

¶ 23 Finally, we observe that the court conducted a scrupulous examination of M.A.'s and J.T.S.'s testimony. The trial court carefully compared the testimony of each alleged victim, and it explicitly weighed the probative value of the evidence under the *Shickles* factors. The trial court did not adopt the

---

7. Although M.A. and J.T.S. were young adults and N.H. was a minor child, M.A. and J.T.S. were barely past the age of majority at the time that Defendant made unwanted sexual advances toward them. A more significant age gap between the adult victims and the child victims of the same defendant may diminish the similarity between the crimes and thus diminish the probative value of the evidence. *Cf. United States v.*

*Long*, 328 F.3d 655, 661 (D.C.Cir.2003) (concluding that defendant's prior uncharged sexual conduct with older boys was properly admitted as probative of his charged sexual conduct with the alleged minor victims because "bad acts evidence need not show incidents identical to the events charges, so long as they are closely related to the offense and are probative of intent rather than mere propensity").

State's position in its entirety. Instead, the trial court excluded the testimony of B.P. because the remoteness in time diminished its probative value. The trial court also excluded the testimony of D.J.W. due to concerns about the prejudicial effect of cumulative evidence. We conclude that the trial court did not exceed its discretion in admitting the testimony of M.A. and J.T.S. at trial.

## CONCLUSION

¶ 24 The trial court did not abuse its discretion in admitting testimony from M.A. and J.T.S. because the bad acts evidence satisfied the requirements of rule 404(b) and the record indicates that the trial court scrupulously examined the evidence. Because Defendant pleaded not guilty to the specific intent crime of sexual abuse of a child, his intent was at issue and the bad acts evidence was admissible to establish that intent. The particular bad acts evidence introduced was relevant and its probative value outweighed its prejudicial effect.

¶ 25 Accordingly, we affirm.

¶ 26 I CONCUR: PAMELA T. GREENWOOD, Senior Judge.

McHUGH, Associate Presiding Judge (concurring):

¶ 27 Although I agree that the result reached by the majority is consistent with prior authority of this court, I write separately to express my concern about the need for a disciplined approach to the admission of bad acts evidence.

¶ 28 "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Utah R. Evid. 404(b). As the majority correctly notes, bad acts evidence may be properly admitted where (1) it is offered for a proper noncharacter purpose, (2) it is relevant, and (3) the probative value of the evidence outweighs any unfair prejudice to the defendant (Three–Part Test). *See State v. Nelson–Waggoner*, 2000 UT 59, ¶¶ 18–20, 6 P.3d 1120.

¶ 29 By its terms, rule 404(b) permits bad acts evidence to be admitted for purposes other than to prove the defendant's propensity to commit the criminal act charged. *See* Utah R. Evid. 404(b). Those alternative purposes include, but are not limited to, "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Because the defendant pleaded not guilty to sexual abuse of a child, which is a specific intent crime, *see* Utah Code Ann. § 76–5–404.1(2) (2008), the majority concludes that intent was placed at issue and the bad acts evidence was properly admitted to prove that the defendant had the requisite mental state (Not Guilty Rule), *see supra* ¶ 24. I write separately because I do not believe that this Not Guilty Rule should be a substitute for a careful application of the Three–Part Test adopted by our supreme court.

¶ 30 In understanding the relationship between the Not Guilty Rule and the Three–Part Test, it is helpful to examine our prior authority. This court first considered a plea of not guilty to a specific intent crime as a basis for admitting bad acts evidence to prove intent in *State v. Teuscher*, 883 P.2d 922, 926–27 (Utah Ct.App.1994). There, the operator of a home day-care facility was charged with second degree murder after a child in her care died. *See id.* at 924–25. The trial court allowed the State to introduce evidence of other incidents of abuse to show identity of the perpetrator, intent, and the absence of mistake or accident. *See id.* at 925. After the jury reached a verdict of guilty on the lesser-included offense of manslaughter, the defendant appealed, claiming that the trial court erred in admitting the bad acts evidence. *See id.* at 926. In affirming the trial court, we explained our reasoning as follows:

> Defendant argues that intent was not an element of the crime for which she was convicted—manslaughter. Defendant was charged, however, with second degree murder, a specific intent crime. "*Where specific intent is an element of the crime, the prosecution may introduce evidence of other offenses to establish the element of intent even if the defendant has not placed intent into question.*" [People v.] Brown, 199 Ill.App.3d 860, 145 Ill.Dec. 841, 557 N.E.2d [611,] 621 [Ill.App.Ct.1990] (citing

*United States v. Brantley,* 786 F.2d 1322 (7th Cir.1986)). In pleading not guilty, defendant put every element of the charge against her in issue.

*Id.* at 926–27 (emphasis added) (additional citations omitted). Although we cited favorably to the Not Guilty Rule, we also held that the specific defenses asserted by the defendant in *Teuscher* had placed intent, identity, and lack of accident at issue. *See id.* at 928 (noting that the defendant argued that the injuries to the child victim could have been caused by either of her teenaged daughters or when she accidently dropped the child in a playpen). Thus, even without application of the Not Guilty Rule, there were noncharacter purposes for admitting the evidence in *Teuscher.*

¶ 31 In reaching our decision in *Teuscher,* we relied upon *People v. Brown,* [199 Ill. App.3d 860, 145 Ill.Dec. 841] 557 N.E.2d 611, 621 (Ill.App.Ct.1990), an Illinois Court of Appeals decision that, in turn, followed the Seventh Circuit's decision in *United States v. Brantley,* 786 F.2d 1322, 1329 (7th Cir.1986). *See Teuscher,* 883 P.2d at 926–27. The year after our decision in *Teuscher,* the Federal Rules of Evidence were amended to permit the introduction of evidence of a defendant's prior sexual assault or child molestation offense for the purpose of proving any matter to which it is relevant. *See* Fed.R.Evid. 413 (sexual assault); *id.* R. 414 (child molestation); *id.* R. 415 (civil cases involving child molestation or sexual assault).[1] Thus, under the current federal rules, evidence involving sexual misconduct, like that offered in this case, "is admissible"[2] to show the defendant's propensity to assault or molest the alleged victim of the current charge. *Id.* R. 413–415.

¶ 32 Utah has not adopted rules 413, 414, or 415. *See* Utah R. Evid. 413–415 (indicating that these rule numbers are reserved). Instead, Utah rule 404 was amended in 2008

to add 404(c), which only provides for the introduction of propensity evidence in cases involving the molestation of a child under the age of fourteen. *See id.* R. 404(c). Consequently, the framework for the admission of bad acts evidence in Utah in cases of sexual misconduct involving a person *over* fourteen years of age is governed by rule 404(b). Because N.H. was sixteen at the time of the offense, rule 404(c) is not applicable, and the introduction of the bad acts evidence must be evaluated under the more involved analysis required by rule 404(b).

¶ 33 While the federal approach has greatly simplified the analysis in federal sexual misconduct cases, our jurisprudence has been more complicated. One commentator described the Utah approach as follows:

> If the prior bad acts involve sexual misconduct, or child abuse, or a combination of both, [the Utah] courts generally find a theory of admissibility, *even if no specific theory of admissibility makes sense.* The admission of prior bad acts of sexual misconduct offers prime examples of the "smorgasbord approach," where courts simply provide a long list of permissible uses *without attempting to connect the uses* with the facts of the case.

R. Collin Mangrum & Dee Benson, *Mangrum & Benson on Utah Evidence,* 1 Utah Practice 172 (2008–2009 ed.) (emphasis added).

¶ 34 I agree that the Not Guilty Rule, in its broadest sense, does not require the trial court to connect the uses for the evidence with the facts of the case. Nevertheless, my reading of the prior decisions of this court and the supreme court convinces me that in the fifteen years since our decision in *Teuscher* we have rarely relied solely upon the Not Guilty Rule. Rather, we have also considered whether the specific noncharacter purposes for which the bad acts evidence is

---

**1.** Those rules have been the subject of significant criticism. *See* Fed.R.Evid. 413 advisory committee's notes.

**2.** Out of a concern that the "is admissible" language in the rules would excuse the prosecution from meeting the requirements of Federal Rule of Evidence 403, which allows the trial court to exclude evidence if its probative value is out-

weighed by the risk of unfair prejudice to the defendant, the Supreme Court Advisory Committee proposed that rules 413, 414, and 415 be revised to state "is admissible if it is otherwise admissible under these Rules." *Id.* Congress did not make the suggested revision. *See* Fed. R.Evid. 413–415.

offered are responsive to the defenses raised. *See State v. Holbert*, 2002 UT App 426, ¶¶ 34–36, 61 P.3d 291 (affirming trial court's admission of bad acts evidence relying on both the Not Guilty Rule and the fact that the evidence was offered for the noncharacter purpose of proving motive); *Salt Lake City v. Alires*, 2000 UT App 244, ¶ 11, 9 P.3d 769 (affirming trial court's admission of bad acts evidence, noting that the defendant's identity was at issue both because he denied that he was the person who committed the criminal act and because he pleaded not guilty); *State v. Widdison*, 2000 UT App 185, ¶ 33, 4 P.3d 100 (affirming trial court's admission of bad acts evidence relying on both the Not Guilty Rule and the fact that the defendant had put absence of mistake or accident at issue), *aff'd*, 2001 UT 60, 28 P.3d 1278. *But see* Mangrum & Benson at 172–73 (describing the Utah decisions as admitting "prior sexual misconduct evidence with little more justification than a string listing of such factors as intent, motive, plan, and method of operation").[3] There are two notable exceptions in our prior decisions.

¶ 35 In the first case, *State v. Balfour*, 2008 UT App 410, 198 P.3d 471, we granted interlocutory review of the trial court's denial of the defendant's motion to sever each of the four counts of forcible sexual abuse, involving four different women. *See id.* ¶ 1. As part of our analysis, we were required to consider whether the defendant would be prejudiced by trying the counts together. *See id.* ¶ 18; *see also* Utah Code Ann. § 77–8a–1(4)(a) (2008) ("If the court finds a defendant or the prosecution is prejudiced by a joinder . . . for trial together, the court shall order an election of separate trials of separate counts . . . or provide other relief as justice requires."). To make that determination, we examined whether the evidence related to the other counts would be admissible under rule 404(b) as bad acts evidence even if the counts were tried separately. *See Balfour*, 2008 UT App

410, ¶ 21, 198 P.3d 471 (citing *State v. Lee*, 831 P.2d 114, 118 (Utah Ct.App.1992)). Because the challenge to the trial court's refusal to sever the counts was before us on interlocutory review, the record did not contain the actual defenses asserted by the defendant at his future trial. Therefore, in holding that three of the four counts could be tried together, we relied upon the Not Guilty Rule. *See id.* ¶ 23. We also noted, however, that the State anticipated that the evidence would be relevant to the noncharacter purposes of demonstrating the defendant's intent, absence of accident or mistake, and the alleged victims' lack of consent. *See id.* Further, there was no indication that any of these issues were uncontested. *See id.*

¶ 36 The second decision that warrants consideration in understanding the evolution of our adherence to the Not Guilty Rule is *State v. Bradley*, 2002 UT App 348, 57 P.3d 1139. Bradley was charged with sexual abuse of his two step-children and a biological son. *See id.* ¶¶ 1–8. The counts involving the step-children were severed from the counts pertaining to the biological child. *See id.* ¶ 8. However, the biological son was permitted to testify during the trial of the charges stemming from Bradley's alleged abuse of the step-children. *See id.* ¶ 5. Bradley appealed his conviction, claiming that the trial court committed prejudicial error by admitting the bad acts evidence from the biological son. *See id.* ¶ 12. In the lead opinion from this court, Judge Davis affirmed the trial court's admission of the biological son's testimony, stating, "if specific intent is an element of the offense, prior bad acts may be admissible to establish the element of intent." *Id.* ¶ 21. Judge Davis refused to consider Bradley's claim that the victims had fabricated the allegations of sexual abuse as a proper purpose for admitting the evidence because he was "concerned that allowing prior bad acts testimony to rebut a fabrication

---

**3.** The majority also relies upon *State v. Marchet*, 2009 UT App 262, ¶¶ 32–40, 219 P.3d 75 (following *State v. Nelson–Waggoner*, 2000 UT 59, ¶ 25, 6 P.3d 1120). In my view, *Marchet* simply followed the supreme court's holding in *Nelson–Waggoner, see Marchet*, 2009 UT App 262, ¶¶ 32–40, 219 P.3d 75, which recognized proof of lack of consent as a proper purpose for the admission

of bad acts evidence under certain circumstances in sexual assault cases, *see Nelson–Waggoner*, 2000 UT 59, ¶ 25, 6 P.3d 1120. I do not find either case helpful to the question of whether a not guilty plea allows the State to introduce bad acts evidence to prove intent irrespective of the defenses asserted.

defense by, in effect, bolstering a victim's credibility would eviscerate[ ] the language and spirit of rule 404(b) in that the doctrine could be invoked in nearly every criminal case." *Id.* ¶ 20 n. 7 (alteration in original) (internal quotation marks omitted). Instead, Judge Davis concluded that· the bad acts evidence was properly admitted under the Not Guilty Rule. *See id.* ¶ 22.

¶ 37 Judge Thorne and Judge Orme each concurred separately, agreeing that the evidence was admissible but expressing concern about admitting it pursuant to the Not Guilty Rule when Bradley had not put intent at issue, instead arguing that the incidents alleged by the victims did not happen. *See id.* ¶¶ 70, 73 (Thorne, J., concurring specially); *id.* ¶¶ 80–81 (Orme, J., concurring). Although Judges Thorne and Orme concluded that the evidence was properly admitted, that conclusion was based on the use of the bad acts evidence to rebut Bradley's claim that the victims had fabricated the allegations of sexual abuse. *See id.* While the panel in *Bradley* disagreed about whether the bad acts evidence was admissible to prove intent under the Not Guilty Rule or to rebut Bradley's fabrication defense, each judge was motivated by the concern that rule 404(b) retain some practical utility. *See id.* ¶ 20 n. 7 (majority opinion); *id.* ¶¶ 70, 73 (Thorne, J., concurring); *id.* ¶¶ 80–81 (Orme, J., concurring specially).

¶ 38 I agree with the *Bradley* panel that a request to present bad acts evidence should be carefully considered to avoid further erosion of an already porous rule, *see generally State v. Reed*, 2000 UT 68, ¶ 28 n. 3, 8 P.3d 1025 ("[W]e note that the circumstances that would allow [evidence of sex crimes against persons other than the complaining witness] to be admitted are rare and require the highest scrutiny of the trial judge."). I also believe that application of the Not Guilty Rule in the absence of a meaningful evaluation of the relevance of that particular evidence to the matters actually at issue in the case is contrary to that goal. Indeed, the analysis employed by our supreme court supports the conclusion that there must be a link between the matters at issue and the bad acts evidence, even when the defendant contests guilt.

¶ 39 In *State v. Widdison*, 2001 UT 60, ¶ 45, 28 P.3d 1278, the supreme court affirmed our conclusion that the trial court did not err in admitting bad acts evidence, noting that the defendant had entered a not guilty plea. The *Widdison* court's reasoning, however, includes an analysis of the relevance of the bad acts evidence to the actual defenses raised:

> As explained by the trial court, by pleading not guilty, defendant maintained she was not responsible for Breanna's [ (the child abuse victim) ] death or her injuries. Defendant further claimed that Breanna's injuries were caused by accident when Breanna was caught under her crib mattress or when she lay on toys. Defendant also claimed that Breanna had been in someone else's care when her shoulder was broken and that pneumonia was the sole cause of Breanna's death. Because of defendant's claims, the identity of Breanna's abuser and killer was at issue. Also at issue was the question of whether Breanna's injuries were intentionally or accidentally inflicted. *The evidence to which defendant objects was relevant because it was introduced to show that Breanna's injuries were not the result of accident, and that defendant was the one who inflicted Breanna's injuries.*

*Id.* (emphasis added). Notwithstanding the not guilty plea, the supreme court tied the bad acts evidence to the defenses actually at issue before concluding that the evidence was offered for a proper· noncharacter purpose. *See id.*

¶ 40 Indeed, even the Seventh Circuit, the jurisdiction this court originally followed in *Teuscher,* seems to have softened its application of the Not Guilty Rule. In *United States v. Jones,* 455 F.3d 800 (7th Cir.2006), the defendant appealed his conviction of possession with intent to distribute cocaine on the ground that the trial court erred in admitting evidence of ·a prior drug conviction. *See id.* at 804, 806. The government offered the evidence and the trial court admitted it "because possession with·intent to distribute is a specific intent crime." *Id.* at 807. On appeal, the *Jones* court noted that· the mechani-

cal reliance on the Not Guilty Rule by the trial court, although involving a recitation of "the governing principles from our case law," did not "reflect the sort of critical evaluation of the issue [of whether the evidence was offered for a noncharacter purpose] that we believe ought to be undertaken in determining whether, in an exercise of discretion, such [bad acts] evidence ought to be admitted on the issue of intent." *Id.* at 807–08. The Seventh Circuit conceded, however, that "[t]his lapse well may be attributable, in part at least, to our own treatment of such matters on occasion; our cases have not always reflected a critical application of the principles reflected in the case law to the facts of the individual case." *Id.* at 808.

¶ 41 Reviewing that prior case law, the *Jones* court indicated that the admission of prior conviction evidence is justifiable in drug prosecution cases where the defendant admits possession but denies intent to distribute, and where the defendant claims to have been a "clueless bystander" to a drug trafficking scheme. *Id.* (internal quotation marks omitted). Nevertheless, the federal court of appeals cautioned, "[D]espite the general utility of this evidence to establish intent, it is incumbent on the Government to affirmatively show why a particular prior conviction tends to show ... volition to commit the new crime." *Id.* (alteration in original) (internal quotation marks omitted). The *Jones* court then examined the record and concluded that the arguments made by defense counsel—that while the defendant controlled a small amount of cocaine, the larger portion of the drug could have been the property of one of the other persons at the scene—fairly placed the defendant's intent at issue. *See id.* at 808–09. In affirming the decision of the trial court to admit the evidence, the Seventh Circuit criticized the application of the Not Guilty Rule in the absence of a critical evaluation by the trial court, *see id.* at 807, and the Government's affirmative showing of why the prior convic-

tion is probative of intent in the trial of the new crime, *see id.* at 808. *See generally United States v. Jemal,* 26 F.3d 1267, 1272–74 (3d Cir.1994) (discussing different approaches to the Not Guilty Rule applied by the federal circuits). I believe that at least this much is also required in Utah.

¶ 42 Even when the defendant pleads not guilty to a specific intent crime, I would require the trial court to consider the extent to which the noncharacter purpose asserted for admission of the evidence is actually related to a contested issue in the trial of the current crime. *See generally State v. Killpack,* 2008 UT 49, ¶ 45, 191 P.3d 17 ("[E]vidence of a defendant's ... bad acts may be admitted if such evidence has a special relevance to a controverted issue and is introduced for a purpose other than to show the defendant's predisposition to criminality." (internal quotation marks omitted)). In a case like this, where the defendant asserts that the alleged conduct did not occur at all, the connection between intent and the bad acts evidence is more attenuated. Rather than arguing that he accidentally touched N.H., or that he did so without the requisite "intent to cause substantial emotional or bodily pain to any person or ... arouse or gratify the sexual desire of any person," Utah Code Ann. § 76–5–404.1(2) (2008), the defendant argued that N.H. fabricated the allegations due to his disappointment over not being paid for finding a stray cat.[4] In my view, that difference should be taken into account when assessing whether the evidence should be admitted under rule 404(b). Therefore, I would not allow invocation of the Not Guilty Rule to excuse a careful comparison of the specific bad acts evidence offered with the actual defense asserted.

¶ 43 Here, the defense asserted by the defendant—that N.H. fabricated his story about sexual contact—must also be considered in determining whether the testimony from M.A. and J.T.S. was offered for a noncharacter purpose. While my review of the

---

4. The defendant, however, did not enter into a stipulation expressly conceding that if the jury believed N.H. the trial court could instruct it to also find the requisite intent. *See generally United States v. Jemal,* 26 F.3d 1267, 1269 (3d Cir. 1994) ("[A] district court should generally refuse

to admit evidence of a defendant's prior bad acts to show knowledge and intent when the defendant has proffered a comprehensive and unreserved stipulation that he possessed the requisite knowledge and intent (or other fact sought to be established by the prior bad acts evidence)....").

decisions from the Utah Supreme Court has not revealed a case that has expressly recognized rebuttal of a fabrication defense as a proper 404(b) purpose, the majority correctly notes that *Bradley* did so hold. *See State v. Bradley*, 2002 UT App 348, ¶¶ 70, 73, 57 P.3d 1139 (Thorne, J., concurring); *id.* ¶¶ 80–81 (Orme, J., concurring specially). Consequently, I would follow the conclusion of the *Bradley* majority on this issue that a proper purpose for bad acts evidence is to rebut a defense of fabrication. *See State v. Thurman*, 846 P.2d 1256, 1269 (Utah 1993) (recognizing that, in most instances, subsequent panels of the court of appeals should follow the decisions of a prior panel). However, but for our prior decisions, I would reverse and remand for a new trial so that the trial court could consider each prong of the Three–Part Test in the context of that purpose, as well as any relevance to the element of specific intent. Thus, I would require the trial court to "connect the uses with the facts of the case." R. Collin Mangrum & Dee Benson, *Mangrum & Benson on Utah Evidence*, 1 Utah Practice 172 (2008–2009 ed.).

¶ 44 In conclusion, I believe that the fact a defendant pleads not guilty should not excuse the State from identifying the precise link between the bad acts evidence and a contested issue in the trial of the current crime. In my view, if there is a proper noncharacter purpose, the trial court should then critically consider whether, in fact, the bad acts evidence is relevant to that contested issue. *See* Utah R. Evid. 402. Last, the trial court should evaluate whether its probative value in relation to the specific defense asserted is outweighed by unfair prejudice to the defendant. *See id.* R. 403. Without such an intellectually disciplined approach, rule 404(b) will not serve as an effective check on the introduction of bad acts evidence. *See generally State v. Reed*, 2000 UT 68, ¶ 28 n. 3, 8 P.3d 1025 (noting that the admission of evidence of sex crimes against persons other than the alleged victim is rare). Although that was not done here, I acknowledge that it is not required under the existing authority from this court and, therefore, I must concur with the majority.